Pages 1 – 21

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

DROPBOX, INC.,                    )
                                  )
          Plaintiff,              )
                                  )
   VS.                            ) NO. C 15-01741 EMC
                                  )
THRU, INC.,                       )
                                  )  San Francisco, California
          Defendant.             )  Thursday
                                  )  July 23, 2015
_____)  2:51 p.m.

                    TRANSCRIPT OF PROCEEDINGS

 APPEARANCES:

 For Plaintiff:          WILSON SONSINI GOODRICH & ROSATI
                         650 Page Mill Road
                         Palo Alto, California  94304-1050
                    BY:  DAVID KRAMER, ESQ.
                         JOHN L. SLAFSKY, ESQ.




 For Defendant:          HARVEY SISKIND LLP
                         Four Embarcadero Center
                         39th Floor
                         San Francisco, California  94111
                    BY:  IAN K. BOYD, ESQ.
                         and
                         FERGUSON, BRASWELL & FRASER, PC
                         2500 Dallas Parkway
                         Suite 501
                         Plano, Texas  75093
                    BY:  JOHN M. CONE, ESQ.




 Reported by:            BELLE BALL, CSR #8785, CRR, RDR
                         Official Reporter, U.S. District Court

**THURSDAY, JULY 23, 2015**                                    **2:51 P.M.**

## P R O C E E D I N G S

**THE CLERK:**  Calling Case C-15-1741, Dropbox versus Thru.

Counsel, please come to the podium and state your name for the Record.

**MR. BOYD:**  Good afternoon, Your Honor.  Ian Boyd, Harvey Siskind, on behalf of the Defendant, with my *pro hac* counsel.

**THE COURT:**  Thank you, Mr. Boyd.

**MR. CONE:**  Good afternoon, Your Honor.  John Cone.  I appreciate the opportunity to appear before you.

**THE COURT:**  Great.  Thank you, Mr. Cone.

**MR. KRAMER:**  Hello, Your Honor.  Dave Kramer from Wilson, Sonsini for Dropbox.  And with me is my partner, John Slafsky.

**THE COURT:**  Good afternoon, Mr. Kramer, Mr. Slafsky.

Funny how sometimes these cases sort of line up and get similar issues, saves me a little bit of time, so I don't have to read *MedImmune* twice.

But if you were listening, you understand my view, and that is it's a pretty low standard to meet Article III.  You just have to have substantial controversy between parties having adverse legal interests of sufficient immediacy in reality to warrant issuance of a declaratory judgment.

The controversy must be definite and concrete, real and substantial, and admit a specific belief. And as we know, the reasonable apprehension of an imminent suit is no longer the standard.

And here, pretty clear what the dispute is. There's not much dispute about that. And there's been a fair amount of communication and action before the TTAB, as well as the email that says if resolution cannot be done in a reasonable amount of time, then Thru has indicated it will feel compelled to shift strategy and exercise all options to take advantage of maximizing the value of the asset.

Given that there had been extensive negotiations between the parties, and proceedings before the TTAB, I don't know what else is left in terms of shifting strategy and exercising all options, but it does seem to suggest the big "L" word.

**MR. CONE:** Yes, Your Honor. This is different from the case you had before you, Your Honor. I think the fact that it's a trademark case makes it different. If I may explain why.

Here we've got two companies that use the same trademark, "Dropbox," for essentially the same service. What we want to know is which of those two is entitled to own the trademark and own the registrations for that trademark. That turns on who was the first to use the trademark.

There are Trademark Trial and Appeal Board proceedings on

foot -- one has been on file since I think February of last year -- to determine just those issues, Your Honor.

Those are, in fact, the only issues that the parties have raised. We have not -- we've been using our trademark, we say, since 2004. We have not asked Dropbox to stop using their trademark. They claim to have used their trademark since 2008. They have not asked us to stop using the trademark. They filed this lawsuit. It could certainly have included a claim for trademark infringement. It doesn't.

The parties have, for one reason or another, Your Honor, deliberately limited themselves to having decided the question of priority and ownership. And, the Trademark Trial and Appeal Board is well able to decide that.

I agree with the Court that the *MedImmune* case very much reduced the standard. But that doesn't, I think, mean that every case, every dispute is subject to a declaratory judgment action.

There is in the three-part test after *MedImmune*, sufficient immediacy. This dispute has been going on, as I have indicated to you, for some time. The TTAB proceedings have been on file for over a year.

Where is the sufficient immediacy? For at least almost 18 months, the situation hasn't changed, in the sense --

**THE COURT:** Well, it's immediacy, not urgency. I mean, "immediacy" means that the dispute has come to fruition.

It is at our front door.  And in fact, it's past the front door and now in the backyard, or it's in the house somewhere, maybe hiding out in the bathroom or something now that TTAB -- they have -- they have -- they have stayed proceedings?  Is that -- what's happening --

MR. CONE:  Yes, Your Honor.  The TTAB -- has been its practice for a number of years now -- automatically will -- essentially automatically stays proceedings once it hears that there is a District Court lawsuit involving the same parties and the same trademark.

This may change, Your Honor --

THE COURT:  Which is sort of interesting because, you know, in the patent context, by PR, it's the opposite.

MR. CONE:  Yes.  Yes.  And of course, that's fairly recent, Your Honor.

And, and for many years, there really was no way of resolving or questioning the validity of the patent, other than industry court litigation.

That's never been the case, really, with trademarks. We've always had the Trademark Trial and Appeal Board.

THE COURT:  But the fact the TTAB suspended the opposition preceding pending litigation -- which I assume is intended to allow potential disposition by the Court vis-à-vis ahead of the board.

MR. CONE:  Yes, Your Honor.  Because generally

speaking, if there is District Court litigation, the question of use will be brought up, and one party or the other will be asking for an injunction.  That's not the case here, Your Honor.

In fact, the issue that is before this Court can entirely be decided by the Trademark Trial and Appeal Board, an agency that has been created by Congress, set out in the Act, and has the --

**THE COURT:**  There is a request for injunctive relief here in Part C of the prayer for relief.  Or is it D?  No, I'm sorry, E.

**MR. CONE:**  I think that's an -- injunctive relief, not to stop using the trademark, Your Honor.

**THE COURT:**  (As read)

"...from directly or indirectly charging

infringement, dilution, or the legal violation or

instituting any action for infringement..."

**MR. CONE:**  Yes.  I agree that that couldn't be given by them.  That's not relief that the Trademark Trial and Appeal Board can give, Your Honor.

**THE COURT:**  Right.  So that -- that does transcend the issues.

**MR. CONE:**  That is beyond what the Trademark Trial and Appeal Board can give.

But the second part of my argument, if I may move on to

it, Your Honor, or my case, is that even if the Court has jurisdiction, it's not required to exercise it.  There's a "may" in the statute.  The Court may grant relief.

Why would the Court do that in a case like this?  We have a specialized agency; we have people whose whole working life is devoted to trademark cases.  They've got expertise.  They have -- not that this Court doesn't, Your Honor, of course.  But they've got -- that's what they're there for.

Why does this Court want to give Trademark Trial and Appeal Board litigants a venue to bring all their cases out of the Trademark Trial and Appeal Board into district courts?

If this is allowed, there's no reason why every opposition or every petition for cancellation, one party or the other can say, "Oh, I think I'd like to do this in my home court, not in the trademark office.  I'm going file a declaratory judgment action, make the other side come to my hometown, and file declaratory judgment in the District Court," giving, I think a very unfair advantage to large companies over small companies, Your Honor.

It's a form of forum shopping.  Your Honor mentioned forum shopping earlier this afternoon in one of the other cases.  This is a problem that will be created if the mere filing of a Trademark Trial and Appeal Board case -- which necessarily, if it's a 2(d) action, will involve an allegation the two marks are confusingly similar, or that the opposed mark when used

for the goods of the application is likely to cause confusion with the registered mark.  That would happen every time, Your Honor.

And I don't think the District Court wants to do it, particularly since -- I think there was a feeling for a number of years that the Trademark Trial and Appeal Board was not a real court.  That the judges -- I think -- I'm sure, again, not in this court, but I've read some decisions where there have been very short shrift paid to Trademark Trial and Appeal Board decisions.

In the *B&B Hardware* case, Your Honor, the Supreme Court very recently affirmed that it's a fine place to litigate certain claims; that it has good procedures, fair procedures, that give the parties a chance to bring their dispute before a fact-finder, a legal finder and get a decision.  Which in many cases should be upheld and given collateral estoppel effect in any later litigation.

I think the *B&B Hardware* case does change the playing field, Your Honor.

**THE COURT:**  Well, it certainly adds some warrant to consideration of a stay, since the Court held that TTAB decisions might have some preclusive effect and should be given some dignity, and so therefore, it's not just something to be cavalierly ignored.

On the other hand, there is other case law that talks

about:  Well, we look at, for instance -- it's almost like a primary-jurisdiction kind of argument -- is there a special expertise of the agency?  Is the agency vested with exclusive authority to handle, you know, a particular issue here, to which this Court should defer?  Can it issue the kind of relief that is being sought here?

So in other words, if this were only a claim seeking declaratory relief on who's got registration priority and that sort of thing, that's one thing.  But if what is sought is either an infringement claim or non-infringement claim, challenging use, et cetera, some courts have suggested:  Well, that's -- that makes it more appropriate for the Court to proceed.

So, I mean, it's -- you know, it's a little bit of a gray area.

**MR. CONE:**  The relief, Your Honor, though, does go with the substantive issue of who's first.  The Court's not going to issue an order saying you can't say they're infringing if, in fact, someone has found that we are the true owners of the trademark.

**THE COURT:**  All right.

**MR. CONE:**  I don't think it changes the issues that the Court has to decide, Your Honor.

**THE COURT:**  Well, let me ask your opponent.

If the TTAB were to take the issue before it and issue a

decision about who has priority and to whom the registration belongs, what would be left for this Court to do?

**MR. KRAMER:**  There'd still be the question of whether or not the use in commerce creates a likelihood of confusion, Your Honor.

If the TTAB issues a decision that doesn't bear on, for example, the protectability of Thru's interest, then that interest would still need to be litigated in this Court.

But, the fact that the TTAB may have the ability to resolve this issue was addressed by the Ninth Circuit in the *Rhoades v. Avon* case.

The Ninth Circuit said:  Yeah, if Congress wanted to vest exclusive jurisdiction over this question in the TTAB, it could have done so.  It didn't do so.  And the parties can come before the Court seeking that in Federal District Court, whether or not there's a proceeding before the TTAB.

Beyond that, as the Court correctly pointed out, the TTAB has already deferred to this Court.  It's not the other way around.  The TTAB has, as a matter of practice for years, said:  We're going to defer because the federal district courts have assumed jurisdiction of this case.  And we will await the outcome of that decision, rather than the other way around.

**THE COURT:**  Let me ask you this.  You cite the *Rhoades* case.

**MR. KRAMER:**  Yeah.

**THE COURT:**  And it says:

"...where the 'district court action' involves only the issue of whether a mark is entitled to registration...'"

Close quote -- actually, it's quote, quote, then double quote --

"...it might make more sense to resolve the registration claims at the TTAB first."

Does this case, the instant case, involve only the issue of whether the mark is entitled to registration?

**MR. KRAMER:**  Certainly not, Your Honor.  The issues in this case are the question of whether there is confusingly similar use.  Use that is likely to cause confusion in the marketplace.

And we saw that in the evidence that's before the Court again and again with Thru challenging Dropbox's use in the world of its mark.

And as the Court pointed out, there's a concern about now a TTAB determination on registrability, as it might have preclusive effect in the market, and prevent Dropbox from litigating the question of use in District Court.

I can imagine a case where registrability is the only issue.  Where, for example, in the Washington Redskins case, the Native American groups are challenging the Redskins

registration on grounds that it's immoral and scandalous.  In that case, only registrability is at issue.  There's no question about the Redskins' right to continue using the mark, irrespective of the outcome of that case.

But here, the question of use is front and center. They've made it front and center with their threats, with their claims, with their assertions about Dropbox's use causing confusion, with their lawyer saying "I'm here to clean up the confusion caused by Dropbox's use of the mark."

This is not a case where the only issue before the TTAB is registrability of the mark.  The question is whether Dropbox's use is likely to cause confusion.

They've threatened to bring an infringement action.  They charged Dropbox specifically with infringing their mark. Under this Court's decision in *Activevideo*, that's enough. Just the assertion of infringement is dispositive.

But if you go beyond that, and you look at the question of whether use is actually disputed, we've asked repeatedly for a covenant not to sue here.

We've said:  If you don't have any problem with Dropbox's use of its mark, covenant not to sue, and we'll be okay.  And they've refused.  They refused as recently as two weeks ago to covenant not to sue.  And in that same conversation, they said that they were contemplating a trademark infringement counterclaim in this action.

If use were not at issue, if there were no dispute about Dropbox's use, a covenant not to sue would be a no-brainer. But they've refused to give us one, and in the same breath, have threatened a trademark infringement counterclaim.

And previously, as the Court pointed out, they said they were going to use all options to maximize the value of their asset. That's enough, under the Ninth Circuit's decision in *Chesebrough*. It's far more than was present in *Chesebrough*, far more than was present in the *Neilmed* case that Judge Wilken had.

**THE COURT:** I will note that the *Vena Casa* case that's cited by Thru, the Court did say that the dispute there was simply about the declaratory plaintiffs' attempted registration, not use of the mark, quote-unquote.

So there is -- where use is at issue, likelihood of consumer confusion, et cetera, et cetera comes into play. Then the two proceedings, parallel proceedings are not coextensive and synonymous. And that militates against a stay.

**MR. CONE:** Yes, Your Honor. And although, if I may, the TTAB has stayed the case, if this Court were to decide not to proceed with it, they would merely -- they would simply immediately reopen that proceeding.

In terms of the sensibility of allowing this type of declaratory judgment, which is basically taking things away

from the TTAB, Professor McCarthy -- who, as you know, Your Honor, is one of the leading authorities on trademark issues -- also warns against the risk of this being an end run around TTAB proceedings.  And people should not be allowed and encourage to do it.

And I think that citation from McCarthy is in our papers too, Your Honor.

**THE COURT:**  Well, and it depends upon the facts of each case, the scope of the suit, whether use is involved -- is at issue, whether there are issues that transcend the scope of the question before the TTAB.

I mean, there's all sorts of -- timing might be an issue.

**MR. CONE:**  Yes, Your Honor.

**THE COURT:**  Whether it's transparent.  But in this case, it does seem to me that the application for the trademark was made by Dropbox back in 2009.  There's nothing to suggest that the instant suit -- and there have been, you know, discussions back and forth between the parties, starting way back in 2011.

So, again, there's nothing to indicate this was a precipitous action designed to gain just tactical advantage.  There's been discussions going back between the parties.

So, I'm not going to dismiss the case.  I'm not going stay the case in favor of the TTAB, for the reasons stated.  And so, we will proceed in this matter.

And that leads us to the case-management conference that we have scheduled for today, and where we go from here.

And I want to ask, it sounds like with respect to ADR, the -- well, there's some difference between a Court-appointed mediator and a Magistrate-supervised settlement conference.  I wonder if you've had any more thoughts on that.

**MR. CONE:**  Your Honor, we continue to believe that the private mediation route is likely to be the most effective here.  We would like that to be the chosen form of ADR.  I think we can do that quickly.  I don't think there's any need to delay it for many months before we do that.

And we see that a mediator who would devote, you know, considerable time and attention to what is undoubtedly an important case on both sides --

**THE COURT:**  Right.

**MR. CONE:**  -- would be a sensible thing to do, rather than imposing more on the judges of this court.

**THE COURT:**  All right.  So given the magnitude of this case, you think that the time necessary warrants a mediator who might have more time.

**MR. CONE:**  Yes, Your Honor.

**THE COURT:**  What's your --

**MR. KRAMER:**  We've had terrific experience with the mediations conducted by Magistrates in this Court.  And given the magnitude of the case, we think that the authority that

the Magistrates bring to the table is useful.

But if the Court thinks that the major straits are overburdened and they're not available for that, we will do whatever the Court thinks best.

THE COURT: Well, I want to choose what the parties think best. If I need to prevail on a Magistrate Judge, I'll do that. It's an interesting case, so we won't have any problem attracting a crowd here.

But really, the question I think is the one raised by counsel. And that is: Time is somewhat limited. And if you think this is going to be a somewhat prolonged process, for whatever reason, whether it's merits or whether it's because of what's at stake or whatever the reasons are, that's one advantage of mediation.

On the other hand, as you've pointed out, we've got experienced Magistrate Judges, and sometimes the power of the robe helps a bit.

MR. KRAMER: (Nods head)

MR. CONE: (Nods head)

THE COURT: So I -- I prefer to get guidance from you all, but I don't know if you have any more thoughts or comments.

MR. CONE: Your Honor, I think I heard, like, one and half of us in favor of private mediation. And I'm definitely in favor. And my learned friend here is halfway in favor of

it.

MR. KRAMER:  I am not opposed to it, I would say, Your Honor.  And that's fine.  If that's what the Court would prefer, or that's what opposing counsel would prefer, we're happy to go that route, at least to start.

THE COURT:  Sure.  Why don't we do that.  And obviously, as has happened sometimes, if that doesn't work and we have to go to a second mode, the obvious one would be a Magistrate Judge.

Why don't we try this out.  Sounds like -- I don't sense you need a whole lot of discovery in this matter -- do you, for something?  Or, what is your view?

MR. KRAMER:  You know, Your Honor, we have gotten some preliminary documents from Thru.  I think we might want some additional documents about their supposed use.  So, documents reflecting that use.  No depositions before the ADR, but I think documents on that front would be very helpful.

Documents showing the establishment of some secondary meaning by Thru in the Dropbox name, or least what they contend demonstrates the establishment of secondary meaning would be useful in advance.

THE COURT:  Okay.

MR. KRAMER:  But that's basically what we've got in mind.

THE COURT:  How about on your side?

**MR. CONE:**   Your Honor, in the TTAB proceedings, Dropbox served its discovery first.  We responded to that.  We have given them answers to interrogatories.  We've given them some documents.  We certainly have some additional documents.

When the time came for them to answer our discovery requests, they told us that this case had been filed, and the TTAB proceeding was going to be --

**THE COURT:**   You've got some discovery pending.

**MR. CONE:**   We didn't get any -- any information at all.  Maybe they could answer the -- I can resubmit the discovery, the written discovery.

**MR. KRAMER:**   Well, yeah.  I tried to be limited in the discovery that I was identifying.

The problem in part with the discovery that Counsel's now speaking of is that it is wide-ranging, all-encompassing, and would be the entire case.  That is a burden.

If we're going to go to -- if it's going to be reciprocal and we can both have unfettered discovery, that's fine.  We're perfectly okay with that, in advance of an ADR.

On the other hand, if it's going to be limited in the interests of a productive ADR, then that discovery is --

**THE COURT:**   And, that is my general approach.  I could call this phase one discovery, pre-mediation discovery.

**MR. CONE:**   Yes, Your Honor.

**THE COURT:**   It should be focused, narrowly tailored,

not the kitchen sink, because you'll have that opportunity. If this case doesn't settle, you'll have plenty of opportunity to discover this case.

So I would like to go ahead, and I will permit focused written discovery on both sides for the purposes of preparing for the mediation.

**MR. CONE:** Yes. Your Honor, if I may say, from our point of view, they've said in the papers -- I don't think it's -- that they started to use in 2008. We know that's a long time after 2004.

What they've got to do is to piggyback onto the use by another company, where they bought the trademark from this other company in the context of settling some litigation.

I'd ask that my discovery be entitled to inquire into that, because that is --

**THE COURT:** Well, if it's relevant.

**MR. CONE:** Yes.

**THE COURT:** If it's relevant, it seems like, scope-wise --

**MR. CONE:** Yes, Your Honor.

**MR. KRAMER:** Sure.

**THE COURT:** So, that's fine. How you define them, what documents, whether it's high-level documents or key documents -- that's what I'm asking, that, you know, you don't have to produce hundreds of thousands of --

**MR. CONE:**  No, Your Honor.  I don't want hundreds of thousands of documents.

**THE COURT:**  But if you can key in on what -- it's not the timeline, so much as it's the scope.

**MR. CONE:**  Right.  Yes, Your Honor.

**THE COURT:**  All right.  And can you do this, go to mediation within 90 days?  Is that a reasonable amount of time?

**MR. CONE:**  Yes, Your Honor.

**MR. KRAMER:**  Certainly, Your Honor.

**THE COURT:**  All right.  Let's do that.  I'll order that parties be referred to private mediation, to be completed within 90 days.

Each party to conduct focused written discovery relevant to the necessary preparation for mediation.  No depositions, sounds like, needed at this point.

In the meantime, what I will also do is set a schedule in this case, a trial schedule, so you know that you're on if this case doesn't resolve.

I have January -- I know you asked for November-December. I do have January 23rd, 2017, as a trial date.  That will give you until -- really, almost a year, which seems like a lot of time to me, to finish discovery.

And so you'll have plenty of time after mediation and after Phase One to complete discovery.

And I'll get out a full schedule that has pretrial dates, motions for summary judgment deadlines, and everything else.

**MR. CONE:**  Yes, Your Honor.

**MR. KRAMER:**  Thank you.

**THE COURT:**  And we should reconvene 120 days after your mediation and see where we're at.

**THE CLERK:**  November 12th at 10:30.

**THE COURT:**  That'll be your next status conference. You can just file an update.  I don't need a whole rewrite, but any developments since then, that you can report.

And hopefully if you can find a way to resolve this case before then, we will take it off calendar.  Otherwise, I'll see you then.

**MR. KRAMER:**  Thank you.

**MR. CONE:**  Thank you.

**THE COURT:**  Thank you.

(Proceedings concluded)

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/   Belle Ball*_____

Thursday, August 27, 2015

Belle Ball, CSR 8785, CRR, RDR