1  DAVID H. KRAMER, State Bar No. 168452
JOHN L. SLAFSKY, State Bar No. 195513
2  JACOB T. VELTMAN, State Bar No. 247597
KEVIN L. SPARK, State Bar No. 275146
3  WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
4  650 Page Mill Road
Palo Alto, California  94304-1050
5  Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
6  dkramer@wsgr.com
jslafsky@wsgr.com
7  jveltman@wsgr.com
kspark@wsgr.com
8
Attorneys for Plaintiff
9  DROPBOX, INC.

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| 14 DROPBOX, INC., a Delaware corporation, | ) | Case No. 3:15-CV-01741-EMC (MEJ) |
| | ) | |
| 15 Plaintiff, | ) | **DROPBOX'S MOTION TO APPROVE** |
| | ) | **CERTIFICATION UNDER** |
| 16 v. | ) | **STIPULATED PROTECTIVE ORDER** |
| | ) | |
| 17 THRU INC., a Delaware corporation, | ) | |
| | ) | |
| 18 Defendant. | ) | |
| | ) | |
| 19 _____ | ) | |

20

21        Pursuant to the Stipulated Protective Order (Dkt. 47) and this Court's Minute Order of

22  December 10, 2015 (Dkt. 45), Plaintiff Dropbox, Inc. ("Dropbox") moves to certify Dropbox in-

23  house counsel Bart Volkmer and Jean Niehaus as House Litigation Counsel under the Stipulated

24  Protective Order. These two attorneys, who work in Dropbox's in-house legal department and

25  are currently overseeing this case, play no role in competitive decisionmaking at Dropbox.

26  Accordingly, they should be certified under the Protective Order so they may view HIGHLY

27  CONFIDENTIAL – ATTORNEYS' EYES ONLY materials to properly oversee this case and

28  make strategic decisions. Dropbox is required to file this motion because Defendant Thru, Inc.

1   ("Thru") has objected to the sufficiency of Dropbox's certifications, copies of which are attached

2   to the accompanying Declaration of John Slafsky ("Slafsky Decl.") as Exhibits 1 and 2.

3        Courts in the Ninth Circuit have recognized both the need for in-house attorneys to have

4   access to litigation materials and the potential concerns flowing from allowing parties to examine

5   the confidential materials of their competitors. To balance these interests, in *Brown Bag Software*

6   *v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), the Ninth Circuit adopted the "competitive

7   decisionmaking" standard established by *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed.

8   Cir. 1984). Under this standard, the "crucial factor" to consider when determining whether a

9   given in-house attorney should be permitted to access confidential information designated

10  attorneys'-eyes-only is "whether in-house counsel was involved in competitive decisionmaking."

11  *Brown Bag Software*, 960 F.2d at 1470. In-house attorneys are deemed to engage in "competitive

12  decisionmaking" when "advising on decisions about pricing or design made in light of similar or

13  corresponding information about a competitor." *Id*. (citation omitted).

14       As this Court explained in *MMCA Grp., Ltd. v. Hewlett-Packard Co.*,

15       According to the court [in *Brown Bag*], a crucial inquiry was whether in-house
         counsel was involved in 'competitive decisionmaking' -- i.e., giving advice on or
16       participating in decisions on product design, pricing, and the like made in light of
         similar or corresponding information about a competitor.

17

18  No. C-06-7067 MMC (EMC), 2009 U.S. Dist. LEXIS 21883, at *3-4 (N.D. Cal. Mar. 5, 2009)

19  (J. Chen) (citation omitted).

20       Pursuant to this standard, the analysis focuses on the role of the in-house attorney in

21  participating in these types of decisions: "the standard is not 'regular contact' with other

22  corporate officials who make 'policy,' or even competitive decisions, but 'advice and

23  participation' in 'competitive decision-making.'" *Santella v. Grizzly Indus.*, No. 3:12-mc-00131-

24  SI, 2012 U.S. Dist. LEXIS 158349, at *16-17 (D. Or. Nov. 5, 2012) (quoting *Matsushita Elec.

25  Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991)). "Mere correspondence

26  with competitive decisionmakers or attendance at competitive decisionmaking meet[ings] does

27  not itself constitute competitive decisionmaking." *Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-

28  02709 EMC (LB), 2012 U.S. Dist. LEXIS 23103, at *12 (N.D. Cal. Feb. 23, 2012) (citing

1    *ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*, 274 F.R.D. 576, 580 (E.D. Va 2010).

2    Where in-house counsel manages litigation, their legal advice "does not include advice about

3    business strategy, pricing, marketing strategies, product design and development, or competitive

4    analysis[,] and they do not participate in any of [the party's] competitive decisions made in light

5    of similar or corresponding information about [the party's] competitors," sharing attorneys'-

6    eyes-only information is appropriate. *Id*. at *12-13, *9-10.

7        Here, this Court's Minute Order of December 10, 2015, which arose from a Case

8    Management Conference without the benefit of briefing, states that Dropbox's in-house attorneys

9    would be permitted access to attorneys'-eyes-only information if they could provide "written

10    certification" that "they only provide legal advice to Plaintiff and that they do not have *any*

11    business role or authority to participate business decisions for Plaintiff." Dkt. 45 (emphasis

12    added). Thru has since taken the position that this standard is intended to be more restrictive than

13    the authority highlighted above. Dropbox disagrees and believes the Court had the relevant

14    standard in mind. As set forth below, Dropbox can certify that its two in-house attorneys do not

15    participate in competitive decisionmaking.

16        Bart Volkmer has certified that at Dropbox he serves as "the head of litigation and

17    regulatory matters." Slafsky Decl., Exhibit 1, ¶ 5 ("Volkmer Certification"). In this role he is

18    responsible for lawsuits and regulatory inquiries involving Dropbox, oversees patent

19    development and employment matters, and oversees a team that handles risk and compliance and

20    security concerns. *Id*. Beyond these legal and risk management tasks, Mr. Volkmer has no

21    business role at Dropbox. *Id*. ¶ 6. Similarly, Jean Niehaus has certified that she manages

22    "Dropbox's global litigation and regulatory matters," and that she also leads a team that deals

23    with outside requests for user data and content removal and manages user safety issues. Slafsky

24    Decl., Exhibit 2, ¶ 5 ("Niehaus Certification"). Beyond these legally focused tasks, Ms. Niehaus

25    has no business role at Dropbox. *Id*. ¶ 6. These certifications indicate that neither Mr. Volkmer

26    nor Ms. Niehaus is involved in competitive decisionmaking—they do not advise on or participate

27    in "product design, pricing, and the like" at all, much less in situations that would implicate

28

1  confidential information from Thru. *MMCA Grp., Ltd.*, 2009 U.S. Dist. LEXIS 21883, at *4

2  (citation omitted).

3        Notwithstanding these assurances, Thru has refused to accept the Dropbox certification

4  for Bart Volkmer as adequate, objecting that the Volkmer Certification "expressly states that he

5  has several business roles." Slafsky Decl., Exhibit 3 (e-mail from Thru's counsel).[1]   However,

6  Mr. Volkmer's roles at the company are legal and risk related and are within the province of a

7  legal department as opposed to general business or product functions. To whatever extent they

8  can be characterized as "business" functions, they are not the kind of functions that matter for

9  purposes of a competitive decision maker analysis. Mr. Volkmer is not setting prices, guiding

10  product development, or performing competitive analyses.

11        Thru also objected to Mr. Volkmer's role overseeing Dropbox's patent development

12  program. *Id.* This point is not well taken for three reasons.

13        **First**, this is not a patent dispute where Thru will be producing significant amounts of

14  confidential technical information to a competitor. This is a trademark dispute concerning the

15  public use of the Dropbox mark. Given this posture, there is no reason to believe that Mr.

16  Volkmer's access to Thru's confidential information would trigger the concerns typically raised

17  when a party seeks a patent prosecution bar in an protective order. *See Applied Signal Tech., Inc.*

18  *v. Emerging Mkts. Commc'ns*, No. C-09-02180 SBA (DMR), 2011 U.S. Dist. LEXIS 97403, at

19  *8 (N.D. Cal. Jan. 20, 2011) ("[T]he information designated to trigger the [prosecution] bar must

20  be relevant to the preparation and prosecution of patent applications.") (citing *In re Deutsche*

21  *Bank Tr. Co. Ams.*, 605 F.3d 1373, 1381 (Fed. Cir. 2010)).

22        **Second,** there is no risk of inadvertent disclosure if Mr. Volkmer accesses whatever

23  confidential technical information Thru produces in this case. Mr. Volkmer does not prosecute

24  patents and is not involved with the day-to-day operations of Dropbox's patent prosecution

25  program (e.g., harvesting inventions, filing applications, responding to office actions). Instead,

26

27      [1] Thru has previously indicated that they have similar objections regarding Mr. Volkmer's colleague, Jean Niehaus.

28

1   among other supervisory duties, Mr. Volkmer oversees the general direction of Dropbox's patent

2   development and patent acquisition program. His lack of involvement in direct prosecution

3   should allay any concerns that Thru has about possible inadvertent disclosure of confidential

4   technical information. *See In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1379 (Fed. Cir.

5   2010) ("Because patent prosecution is not a one-dimensional endeavor and can encompass a

6   range of activities, it is shortsighted to conclude that every patent prosecution attorney is

7   necessarily involved in competitive decisionmaking.").

8       **Third,** if the Court believes that some risk of inadvertent disclosure exists, Dropbox

9   would not object to including a separate category in the protective order for technical

10  information that is subject to a patent prosecution bar. *Karl Storz Endoscopy-Am., Inc. v. Stryker*

11  *Corp.*, No. 14-cv-00876-RS (JSC), 2014 U.S. Dist. LEXIS 163473, at *12-13 (N.D. Cal. Nov.

12  21, 2014) (modifying N.D. Cal. model protective order to include specific HIGHLY

13  CONFIDENTIAL – SUBJECT TO PATENT PROSECUTION BAR category to address

14  concern that "not all information designated by Defendant as 'highly confidential' should trigger

15  a prosecution bar."). This would allow Dropbox's in-house lawyers the ability to review Thru's

16  non-technical confidential information and appropriately advise Dropbox in this trademark case.

17      In light of the parties' disagreement, Dropbox respectfully requests that, pursuant to its

18  Minute Order and the relevant case law, this Court permit Bart Volkmer and Jean Niehaus to

19  have access to information designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

20  ONLY under the Stipulated Protective Order.  In the alternative, Dropbox requests modification

21  of the protective order to add a separate category for confidential technical information entitled

22  HIGHLY CONFIDENTIAL – SUBJECT TO A PATENT PROSECUTION BAR.

23

24  Dated:  February 24, 2016          WILSON SONSINI GOODRICH & ROSATI
                                       Professional Corporation

25

26                                     By: */s/ John L. Slafsky*
                                           JOHN L. SLAFSKY

27
                                       Attorneys for Plaintiff
28                                     DROPBOX, INC.