# EXHIBIT 40

1  IAN K. BOYD, State Bar No. 191434
2  KATE W. McKNIGHT, State Bar No. 264197
   HARVEY SISKIND LLP
3  Four Embarcadero Center, 39th Floor
   San Francisco, California 94111
4  Telephone: (415) 354-0100
   Facsimile: (415) 391-7124
5  iboyd@harveysiskind.com
6  kmcknight@harveysiskind.com

7  JOHN M. CONE (admitted *pro hac vice*)
   FERGUSON, BRASWELL & FRASER, PC
8  2500 Dallas Parkway #501
   Plano, Texas 75093
9  Telephone: (972) 378-9111
   Facsimile: (972) 378-9115
10 jcone@dallasbusinesslaw.com

11
   Attorneys for Defendant
12 THRU INC.

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                       SAN FRANCISCO DIVISION

17 DROPBOX, INC., a Delaware corporation,    )   Case No. C 15-01741 EMC
                                             )
18          Plaintiff/Counter-Defendant,     )
                                             )
19      v.                                   )   **DEFENDANT THRU INC.'S**
                                             )   **SECOND AMENDED AND**
20 THRU INC., a Delaware corporation,        )   **SUPPLEMENTAL RESPONSES TO**
                                             )   **PLAINTIFF DROPBOX'S FIRST**
21          Defendant/Counter-Plaintiff.     )   **SET OF INTERROGATORIES**
                                             )
22 _____       )

23          Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Thru Inc.

24 ("Thru") makes the following responses to Plaintiff Dropbox, Inc.'s ("Dropbox") First Set of

25 Interrogatories (the "Interrogatories").

26                             **OBJECTIONS**

27          Thru objects to Definition 1 if, and to the extent, it extends the meaning of the terms

28 beyond persons controlled by or acting on behalf of Defendant Thru Inc.

EXHIBIT 25
WIT: _____
DATE: 7-13-16
JULIE BRANDT, RMR, CRR

1    Thru objects to Definition 2 because the identities of all "persons controlled by or acting

2    on behalf of Dropbox, Inc." are not known to Thru Inc.

3    Thru objects to Definition 5 if, and to the extent, that the definition purports to extend the

4    scope of discovery beyond that provided for in the Federal Rules of Civil Procedure, and this

5    Court's rules, as interpreted by precedent cases binding on this Court.

6    Thru objects to Definition 7 to the extent that it requires Thru to obtain detailed

7    information about third parties, documents, products and services not currently known to it.

8

9                         **OBJECTIONS TO INSTRUCTIONS**

10    Thru objects to the Instructions to the extent they seek to impart on Thru a duty to obtain

11    and provide information not required by the Federal Rules of Civil Procedure and this Court's

12    rules, as interpreted by precedent cases binding on this Court.

13

14                        **RESPONSES TO INTERROGATORIES**

15    **INTERROGATORY NO. 1:**          Describe, in detail, the manner in which you conceived of

16    and selected the DROPBOX mark. Include in your description the reasons why you selected and

17    adopted the DROPBOX mark identify any marks that were considered in the process of selecting

18    the DROPBOX mark, and specify all relevant dates and the identities of each person involved in

19    the conception and selection of the DROPBOX mark.

20    **OBJECTION**:

21    **RESPONSE**:

22    **AMENDED SUPPLEMENTAL ANSWER:**

23    In April 2003, Daniel Hurtubise and Rob Sherington, employees of Thru, then

24    RumbleGroup, were developing Thru's File Transfer Protocol replacement product and created a

25    feature which enabled a subscriber to Thru's product to receive documents from others

26    (subscribers and non-subscribers) by providing a separate file folder that could be accessed by the

27    other person.  Hurtubise and Sherrington considered this to be an important, unique feature of the

28

1   Thru product and suggested in April 2003 that it be called DROP BOX or DROPBOX (THRU

2   011302) because it suggested the nature of the aforementioned service.

3         Lee Harrison was informed of this feature and proposed name on April 21, 2003 and

4   approved it orally shortly after.  Rick-Holiday Smith was also present when the mark DROPBOX

5

6   was considered and adopted in 2003. No other marks were considered and Thru thereafter referred

7   to this feature as DROPBOX.

8   **ORIGINAL ANSWER:**

9         a)     Thru wanted a way of replacing anonymous FTP which would also have no direct

10  connection to the file system, that is to say, a blind upload to a predefined folder.

11        b)     The name came from moving an electronic file to be delivered to a user into a

12  separate electronic file folder from which the user could retrieve it.

13

14        c)     The mark DROPBOX was first attributed to Daniel Hurtubise of Thru in a product

15  road map email sent 04/18/2003 from Sean-Michael Daley.  The mark was approved by Lee

16  Harrison.

17

18  **INTERROGATORY NO. 2:**     Explain the meaning of the word "dropbox" as used in this

19  sentence on your website: "Consumer dropbox applications have attracted millions of users, and

20  the popularity of these solutions is growing by leaps and bounds."

21

22  **OBJECTION**:

23  **RESPONSE**:

24  **SUPPLEMENTAL ANSWER:**

25        The word "dropbox" as used in the sentence "consumer dropbox applications" means the

26  consumer-directed service provided by Plaintiff to its users under the mark DROPBOX.  Thru has

27  experienced multiple instances of potential customers expressing concern about the security of

28  Thru's DROPBOX product because customers think that Thru may be part of, or be associated or

affiliated with, Plaintiff and there is a general impression that Plaintiff's DROPBOX product is insecure and does not provide the level of protection required for enterprise documents. Thru was seeking on its website to distinguish itself from Plaintiff without unnecessarily promoting Plaintiff or its services.

**ORIGINAL ANSWER:**

"Drop" is a verb meaning, inter alia, to fall suddenly or unexpectedly. "Box" is a noun meaning, inter alia, a rigid receptacle, usually rectangular in cross section with a lid. The quoted sentence is a reference to Plaintiff's commercial activities which have caused some of Thru's enterprise customers to question the security and robustness of Thru's product.

**INTERROGATORY NO. 3:**       Set forth, in detail, the basis for your claim that the DROPBOX mark is distinctive as applied to Thru's products or services, whether inherently or via secondary meaning. Include in your description all relevant dates, the facts supporting the exact earliest date of secondary meaning on which you will rely in this proceeding to establish your rights in the mark DROPBOX and specify the geographic area(s), as applicable.

**OBJECTION**: Thru objects that this Interrogatory purports to be a single interrogatory but contains discrete subparts.

**RESPONSE**:

**SUPPLEMENTAL ANSWER:**

The DROPBOX mark is inherently distinctive as applied to Thru's products or services because it is neither generic, nor descriptive, of those services. The term DROPBOX is not recognized in many contemporary dictionaries, e.g. Merriam-Webster's College Dictionary (THRU 002473-76), Webster's Ninth New Collegiate Dictionary (THRU 002477-81), Merriam-Webster's Collegiate Dictionary (THRU 002486-89). It is defined in The New Oxford American Dictionary (Second Edition) as "2. A secured receptacle into which items, such as returned books,

1   or videotapes, payments, keys, or donated clothing can be deposited." (THRU 002482-85). The

2   term "dropbox," therefore, does not describe Thru's functionality, namely its replacement for the

3   previously used FTP technology. At the most, it is suggestive of functionality that allows a non-

4   subscriber to Thru's product to make a document available to a subscriber by placing it in a file

5   folder and giving the non-subscriber access to that folder.

6

7   Because DROPBOX is an inherently distinctive mark, Thru contends that it does not

8   require proof of secondary meaning in order to merit protection. If the Court finds the term

9   DROPBOX to be descriptive of the parties' products, Thru will contend that the nature and extent

10  of its use of DROPBOX as a trademark prior to Plaintiff's claimed date of first use of DROPBOX

11  created secondary meaning prior to that priority date. In particular, the trademark DROPBOX has

12  been used continuously in all Thru's products since at least as long ago as April 13, 2004. Thru

13  has provided documents evidencing the extent of its sales of products that include DROPBOX

14  functionality and its efforts to advertise and promote the DROPBOX trademark. The extent of

15  Thru's use has resulted in the purchasing public for Thru's enterprise directed product regarding

16  DROPBOX as indicating a unique source of products or services, namely Thru. The purchasers of

17  Thru's product are located throughout the U.S. The instances of confusion between Thru and

18  Plaintiff, see Response to Interrogatory No. 8, are evidence that the relevant purchasing public

19  understand DROPBOX as indicating a source of services. In 2004, Thru decided to include use of

20  its trademark DROPBOX in the signature block of all Thru employees' emails and encouraged its

21  customers to do the same (which many did). Since approximately May 2004, this has been the

22  practice so that all emails sent by Thru employees have included a reference to DROPBOX. It is

23  also displayed on the portal that all users of Thru's product use to access that product. Many

24  customers also display Thru's DROPBOX trademark on their website to indicate their ability to

25  receive documents using Thru's product.

**ORIGINAL ANSWER:**

As a suggestive mark, DROPBOX does not require secondary meaning. Nevertheless, the relevant purchasing public for Thru's services recognize DROPBOX as denoting services provided by Thru. The DROPBOX functionality has been on the all Thru websites and portals nationally at least since May 24, 2004. Email marketing campaigns, national magazine ads pointed prospect back to the Thru websites. To the extent needed, DROPBOX acquired secondary meaning as a result of Thru's continuous use of the mark from May 2004 onward. Secondary meaning was established prior to September 1, 2009.

**INTERROGATORY NO. 4:**     Set forth, in detail, the basis for your claim that your rights in the DROPBOX mark are superior to Dropbox's rights in the DROPBOX mark, including the facts that support the exact earliest date of first use on which you will rely in this proceeding to establish your rights in the mark DROPBOX.

**RESPONSE**:

**SUPPLEMENTAL ANSWER:**

Thru adopted the trademark DROPBOX in 2003 and started to use it at least as early as May 24, 2004 as evidenced by the copy of its website on that date as stored by the Internet Archive Wayback Machine, which includes reference to the DROPBOX functionality as part of the product. Thru contends that DROPBOX is an inherently distinctive mark as used for Thru's FTP product and that Thru's use of DROPBOX as a trademark antedates any date that Plaintiff can claim as priority for its use of DROPBOX.

**ORIGINAL ANSWER:**

Thru's continuous use of the trademark DROPBOX since as early as May 24, 2004, which is prior to the priority date of Plaintiff's rights in the DROPBOX mark.

a)     Internet Archive shows Thru's date of first use as May 24, 2004.

1

      b)     Thru's DROPBOX feature is internet delivered and is on the front page of every

2

Thru portal available anywhere in the United States.

3

      c)     Email from 4/17/2003 and the belief that DROPBOX is Thru's trademark.

4

5

6 **INTERROGATORY NO. 5:**     Describe, in detail, the manner in which you have used the

7 DROPBOX mark.  Your description should include the products and services you have offered

8 under the mark and the time periods and geographic areas that those products and services were

9 marketed under the mark in.

10 **OBJECTION**:

11 **RESPONSE**:

12 **SUPPLEMENTAL ANSWER:**

13

14      Thru's sole product is a file sharing service designed for and offered primarily to

15 enterprises.  Each purchaser/subscriber receives the same product, which has been enhanced and

16 improved over time.  The product allows all participants at a subscribing enterprise to access their

17 content/data remotely by logging in via a Thru portal.  Since at least as early as May 2004, one of

18 the functionalities available to users of the Thru product has been identified by the trademark

19 DROPBOX.  This particular functionality allows the subscriber to receive documents from a third

20 party by storing them in a file folder on a remote Thru server.

21

22      Thru has used the trademark DROPBOX in the signature block for all emails sent by all

23 Thru's employees since June 2004.  It has included the DROPBOX functionality in all its products

24 delivered since mid-2004 and has referred to the functionality by the mark DROPBOX

25 continuously since that time.  As such, the mark DROPBOX appears in User Guides, on the front

26 page of every portal through which subscribers access Thru's product.  It is promoted in many of

27 Thru's sales and promotional materials and on Thru's website first at www.rumblegroup.com and

28 since early 2006 at www.thruinc.com.

Thru has also produced business records including Google Analytics Reports and LeadLander daily reports providing information about the number of visits to its website, the identity and location of the visitors and the search terms used.

**ORIGINAL ANSWER:**

    a)      The Dropbox functionality has been included in all Thru products and services since the functionality was added in 2004.

    b)      At least since May 24, 2004 till now.

    c)      Information responsive to this Interrogatory can be determined from Thru's business records produced in this proceeding as THRU-001194.

    d)      There were 362,842 unique IP address that accessed Thru in the U.S. out of 500,000,000 accesses.  This map is about 1,000 sample points rendered of Thru usage by IP address.



    e)      As of early 2013, there were 362,842 unique IP address that accessed Thru in the U.S. out of a total 500,000,000 accesses.  The map below shows the geographical origin of 1000 of those unique addresses.



Additional information responsive to this Interrogatory can be determined from Thru's business records produced in this proceeding as THRU-002490 to THRU-010011.

**INTERROGATORY NO. 6:**        For each product or service you identify in response to Interrogatory No. 5, list by calendar year the expenditures you have made on advertising, marketing and promotion in the United States.

**OBJECTION**:

**RESPONSE**:

**SUPPLEMENTAL ANSWER:**

The DROPBOX file sharing functionality has not been advertised and promoted separately from Thru's product.  It has, however, been featured in most, if not all, advertising and promotion for Thru's product, including on Thru's website, in sales presentations and in training videos, user guides, trade shows, webinars.  Thru's annual expenditures on advertising and promotion are shown in THRU 011195.

**ORIGINAL ANSWER:**

a)        The Dropbox functionality has been included in all Thru products and services since inception.

b)        At least since May 24, 2004 till now.

c)      Information responsive to this Interrogatory can be determined from Thru's

business records produced in this proceeding as THRU-001194.

d)      As early as 2013, there were 362,842 unique IP address that accessed Thru in the

U.S. out of 500,000,000 accesses.  The map below shows the geographical original of about 1,000

of those unique addresses.



Additional information responsive to this Interrogatory can be determined from Thru's

business records produced in this proceeding as THRU-002490 to THRU-010011.


**INTERROGATORY NO. 7:**       Identify the first time you publicly identified on your website

the word "Dropbox" or any variation as a trademark or service mark.  Include in your response the

date of the first time you used either the "TM" or "SM" symbol in connection with the DROPBOX

mark.

**RESPONSE**: At least as early as May 24, 2004.

**SUPPLEMENTAL ANSWER:**  The Thru external website login page contained DROPBOX™

from 3/22/2004.  Screen shots of the website showing use of DROPBOX™ are stored on the

Wayback Machine from as early as July 2004.

**Learn More**

The distribution of electronic documents/files is central to business communication. Because it is easy to use, email has become the defacto method for file distribution via email attachments. But email tech organizations' email infrastructure at the server level is being strained due to increasing size and frequency of attachments being sent and delivered. At the same time, more powerful softwar applications ar increasing processing power, and larger files mean greater demands on IT infrastructure.

See Larger Screen                                                    See Larger Screen

The above image contains this graphic





**FTH DropBox™**
Use DropBox™ to
upload files to a
member of this
FTH dBank.

**INTERROGATORY NO. 8:**      Describe, in detail, each incident, known to you, of actual confusion (including reverse confusion) between you or any of your products and services and Dropbox or any of its products or services.  Include in your description the identities of the persons most knowledgeable about each such incident.

**RESPONSE**:

**SUPPLEMENTAL ANSWER:**

Thru has knowledge of many instances of actual confusion between Thru's DROPBOX functionality and the Plaintiff's DROPBOX product.

1. Industrial Concepts

1   On or about October 1, 2012, Fused Solutions, Thru's external help center, received a

2   request for assistance from Industrial Concepts.  On further investigation, it was determined that

3   this was not a Thru customer.

4      2. James Neal

5

6   James Neal of South Carolina contacted Thru in November 2012 to cancel this Dropbox

7   account.  Mr. Neal was a subscriber to Plaintiff's services, not of Thru's.

8      3. Rick Tilmans

9   Rick Tilmans contacted Thru in November 2012 because a document had been hacked

10  from his Dropbox.  We determined that Mr. Tilmans was not a subscriber to Thru's services.

11     4. Joyce

12

13  In November 2012, Thru received a request from Joyce requesting support for her Dropbox

14  account.  Thru determined that she was seeking advice about her account with Plaintiff and was

15  not a subscriber to Thru's services.

16     5. Infectious Disease Research Institute

17  On May 14, 2015, Kevin Westenkirchner and Scott Richardson of Thru held a telephone

18  sales conference with Infectious Disease Research Institute to demonstrate Thru's platform.

19  During the course of the call, there was a discussion about Thru's Dropbox capability.  The

20  Institute went on to make comments about Dropbox and it became evident that they thought they

21  were talking to the company Dropbox, Inc.  Thru explained that it was not part of that company

22  and further explained that the two companies were in the middle of a trademark dispute.

23

24  There have been numerous times when confusion caused by the DROPBOX trademark

25  came up during telephone conferences with financial analysts. Below are some of the examples:

26  Gartner:
    Monica Basso: EFSS MQ Related Briefing Call (2015)
27  Guy Creese: Thru Briefing Call (MQ) 2015
    Susan Landry (2015)
28  Joe Mariano (2015)

DEFENDANT THRU INC.'S SECOND AMENDED                    -12-
SUPPLEMENTAL RESPONSES TO PLAINTIFF DROPBOX,
INC.'S FIRST SET OF INTERROGATORIES

1  Charles Smulders (2016)
   Lauri Wurster (2016)
2  Forrester
3  Cheryl McKinnon: Thru Briefing Call (2015)
   Heidi Shey (2015)
4  Art Schuller (2015)
   Info Tech Research Group
5  Stewart Bond (2015)

6       Subhashini Simha has personal knowledge of these conferences.

7       Ms. Simha also recalls that during the October Gartner 2015 ITxpo - A customer asked her
8
   the difference between Dropbox for business and Thru.  During that discussion Thru's product
9
10  'Dropbox' came into the conversation and Ms. Simha had to explain the difference and the name

11  similarity.

12      In addition, when Ms. Simha was briefing two analysts (Guy Creese & Joe Mariano) at

13  June 2015, Digital Workplace Summit –the analysts were confused with "Dropbox" as a product

14  in Thru's portfolio.

15      Tradeshows where prospects asked if we were part of Dropbox, Inc., Lee Harrison, Ian
16
   Snead and Sergey Arutiunov are most knowledgeable about these events.  Mr. Arutiunov knows
17
18  that people get confused on a regular basis, including during calls and at trade shows, but he

19  cannot recollect specific cases.

20      Ian Snead recalls that at last year's Gartner Event in Orlando a couple of attendees

21  believed Thru's Dropbox messaging indicated that it was partnering with Drobox, Inc. He thinks

22  the people involved were Kris Bravo from IHG and Siva Arunachalam from Visa. Confusion also
23
   arises when he is presenting Thru's services to potential customers and to avoid it, he now
24
25  regularly explains that by "Dropbox" he means Thru's product and not the company Dropbox,

26  Inc.

27

28

**ORIGINAL ANSWER:**

6 tradeshows where prospects asked if we were part of Dropbox, Inc., Lee Harrison, Ian Snead and Sergey Arutiunov are most knowledgeable about these events.

**From:** Ong, Paul [mailto:Paul.Ong@sage.com]
**Sent:** Tuesday, February 28, 2012 9:06 PM
**To:** Vincent Friske
**Subject:** Thruinc comparison vs Dropbox and Box.net

Hi Vincent

Long time no see.

I am researching Dropbox and Box.net for iPad users to use DocumentToGo (apple apps) to sycn their pc document to their iPad.

Do you have any comparison guide or chart between Thruinc dropbox and Dropbox.com or Box.net?
What are the advantages of Thruinc in comparison to Dropbox and Box.net?  Given Dropbox offers 2GB free storage, a lot of people will use it.


Kind Regards,
Paul

**Paul Ong, IS Administrator — Sage Business Solutions**

Level 6, 67 Albert Avenue, Chatswood NSW 2067
**D** +61 2 9921 6560 | **F** +61 2 9921 6519 | **T** 13 SAGE (AU) or 0800 904 409 (NZ) | **Reception** +61 2 9921 6500

DROPBOX | CRM | ERP | TIMBERLINE | INDUSTRY SOLUTIONS | WHY SAGE | SBS BLOG

**SAGE BUSINESS SOLUTIONS PTY LTD    ABN 24 091 525 898**
This email and any attachments is intended solely for your use and may be confidential. If you are not the intended recipient, dissemination, distribution or reproduction of this email is strictly prohibited. If you have received this message in

error, please notify the sender and delete it.

**From:** Frederick Yu [mailto:frederick.yu@thruinc.com]
**Sent:** Monday, October 01, 2012 11:08 AM
**To:** helpcenter@thruinc.net
**Cc:** CKT
**Subject:** RE: New escalated case 2093

1

2   Hi CK,
    Could you look into this?  I don't see a site name for him in SF, the account name is <u>Industrial</u>
3   <u>Concepts</u>.

    Thanks
4   **From:** helpcenter@thruinc.net [mailto:helpcenter@thruinc.net]
    **Sent:** Monday, October 01, 2012 10:56 AM
5   **To:** helpcenter@thruinc.net
    **Subject:** New escalated case 2093
6   Thru LLC
    Case.........2093
7   Issue........HowTo's

8
    Has been escalated and requires your attention.
9
    Please the case details below.
10
    Regards,
11  Fused Solutions

12
    ResponseID: 6229 Time: 10/01/12 11:55:44 am
13
    ──────────────────────────────────────────────
14                ResponseID: 6227 Time: 10/01/12 11:14:56 am
    ──────────────────────────────────────────────
15  I received a VM:
    803 572 2738
    James Neal calling and no other message
16
    I called him back
17  He states he is the football coach in SC
    he wants to cancel his dropbox account. It automatically re-upped his account and charged his
18  Visa
    James Neal
19  1413 lyttleton Street
    camven, SC
20  **From:** Vincent Friske <vincent.friske@thruinc.com>
    **To:** Rick Tilmans <crovff7@yahoo.com>
21  **Sent:** Friday, November 2, 2012 8:50 AM
    **Subject:** RE: dropbox document haked
22
    Hello Rick-
23
    I cannot find record of DFAC.  Are you using Dropbox services from dropbox.com or Thru Inc
24  services on a portal with address that includes thruinc.net?

25  Thank you.
    Vincent
26

27  **Vincent Friske, PMP**
    VP Client Services
28  Phone +1.214.496.0100 X2118
    Mobile +1.214.476.5575

1 Dropbox send Secure Email & Large Files
**Thru.**

2

3 **From:** Rick Tilmans [mailto:crovff7@yahoo.com]
**Sent:** Friday, November 02, 2012 10:48 AM
**To:** Vincent Friske

4 **Subject:** Re: dropbox document haked

5 DFAC EC Access

6

7 **From:** Vincent Friske <vincent.friske@thruinc.com>
**To:** Rick Tilmans <crovff7@yahoo.com>: "helpcenter@thruinc.net" <helpcenter@thruinc.net>
**Sent:** Friday, November 2, 2012 8:35 AM

8 **Subject:** RE: dropbox document haked

9 Hello Rick-

10 Thru Support has received your support request. What is your portal address –
portalname.thruinc.net?

11

12 Thank you,
Vincent

13

14 **Vincent Friske, PMP**
VP Client Services
Phone +1.214.496.0100 X2118

15 Mobile +1.214.476.5575

16 Dropbox send Secure Email & Large Files
**Thru.**

17 **From:** Rick Tilmans [mailto:crovff7@yahoo.com]
**Sent:** Friday, November 02, 2012 10:28 AM

18 **To:** helpcenter@thruinc.net
**Subject:** dropbox document haked

19

20 Dear Sir or Madam,

21 Please call me asap since all text from a vital document seems to have disappeared and I am in
full-blown panic mode because I need this document for an upcoming lawsuit involving
$100,000+.

22

23 Thanks in advance,

24 Rick at 602-5710017

25 **From:** Joyce [mailto:jcflanagan1255@sbcglobal.net]
**Sent:** Monday, November 12, 2012 8:48 PM
**To:** Vincent Friske

26 **Subject:** Re: Thru follow-up support request case 3818

27 Ok thank notice

28 Flan

On Nov 12, 2012, at 6:02 PM, Vincent Friske <vincent.friske@thruinc.com> wrote:

Hello Joyce-

I am sorry I cannot be of assistance.  Thru is not associated with dropbox.com.  I believe this link will allow you to submit a help request with dropbox.com.
https://www.dropbox.com/support/s/109/5087720/c/102

If you have an account with dropbox.com, this link may be more helpful-
https://www.dropbox.com/support/login

Thank you,
Vincent


**Vincent Friske, PMP**
VP Client Services
Phone +1.214.496.0100 X2118
Mobile +1.214.476.5575
Dropbox send Secure Email & Large Files
<image001.png>

**From:** Joyce [mailto:jcflanagan1255@sbcglobal.net]
**Sent:** Monday, November 12, 2012 4:57 PM
**To:** Vincent Friske
**Subject:** Re: Thru follow-up support request case 3818

Hi Vincent

Yes it is about Dropbox.com no I do not have thriunc.net

I just can't find the public folder that allows me to make a link and send it by email.

Joyce

Flan

On Nov 12, 2012, at 5:24 PM, Vincent Friske <vincent.friske@thruinc.com> wrote:

Hello Joyce-

We received support request.  It appears in the request you refer to dropbox.com.  The support form you submitted is for the company Thru Inc., which is not related to dropbox.com.  Is your question about dropbox.com?  Do you have an account on a Thru portal with an address that ends with thruinc.net?

Thank you,
Vincent


**Vincent Friske, PMP**
VP Client Services
Phone +1.214.496.0100 X2118
Mobile +1.214.476.5575
Dropbox send Secure Email & Large Files

DEFENDANT THRU INC.'S SECOND AMENDED                    -17-
SUPPLEMENTAL RESPONSES TO PLAINTIFF DROPBOX,
INC.'S FIRST SET OF INTERROGATORIES

1   <image001.png>
2   -----Original Message-----
    From: Nicholas Blanton [mailto:nicholas.blanton@thruinc.com]
3   Sent: Friday, November 02, 2012 10:25 AM
    To: helpcenter@thruinc.net
4   Subject: New Case in Salesforce

5   There is a new case in SF.  Who will be following-up?

6   CASE NUMBER: 00003817
7   NAME: rick tilmans
    COMPANY: n/a
8   EMAIL: croyff7@yahoo.com
    PHONE: 602-571 0017
9   TYPE: Help Request
    SITE: .thruinc.net
10  PROBLEM DESCRIPTION: all text in my Dropbox document is gone!

11  https://na4.salesforce.com/5006000000MaSpk

12  Sample of web searches ending up on www.thruinc.com

| | | | |
|---|---|---|---|
| 1 | The New School<br>New York, NY, United States | 9/18/2012<br>1:49:10 PM | dropbox.com |
| 1 | Texas A&M University System, Office of<br>Technology Commercialization<br>College Station, TX, United States | 9/18/2012<br>1:45:21 PM | dropbox |
| 1 | Bridgton Academy<br>Surry, ME, United States | 9/18/2012<br>1:40:25 PM | |
| 1 | VC32<br>San Jose, CA, United States | 9/18/2012<br>1:21:46 PM | how to integrate ftp with sharepoint |
| 1 | CITGO Petroleum Corporation<br>Houston, TX, United States | 9/18/2012,<br>1:16:34 PM | |
| 1 | Los Angeles CCD Office<br>Los Angeles, CA, United States | 9/18/2012<br>1:16:00 PM | large file transfer laccd |
| 1 | The World Bank Group<br>Washington, DC, United States | 9/18/2012<br>1:06:30 PM | drobox |
| 1 | ECTOR COUNTY HOSPITAL DISTRICT<br>Odessa, TX, United States | 9/18/2012<br>12:45:52 PM | |
| 1 | APi Group, Inc.<br>New Brighton, MN, United States | 9/18/2012<br>12:43:53 PM | |
| 1 | Harvard University<br>Cambridge, MA, United States | 9/18/2012<br>12:32:40 PM | secure file transfer dropbox |

| 1 Lincoln Intermediate Unit 12 Chambersburg, PA, United States | 9/18/2012 12:08:45 PM | www.dropbox.com |
|---|---|---|
| 1 EMC Ryde, Australia | 9/18/2012 11:41:37 AM | would you use dropbox for business? |

**INTERROGATORY NO. 9:**       Describe, in detail, all third-party uses of the DROPBOX

mark of which you are aware, the date you became aware, and all efforts you have made to

enforce against those third parties the rights you claim in the DROPBOX mark.

**RESPONSE**:

**SUPPLEMENTAL ANSWER:**

       Thru became aware of the use of DROPBOX by Carnegie Mellon School of Computer

Science, Barry University, and Oakton Community College in about March 1, 2012 in an email

from Plaintiff's counsel, John Slafsky.

       Thru because aware of Syncplicity's use of DROPBOX in about December 2015.

Subhashini Simha, V.P. of Product Management and Marketing, discovered this use and notified

Mr. Harrison on December 7, 2015. Syncplicity is a competitor of Thru and Ms. Simha regularly

monitors its website to stay informed of its activities.

       Thru has taken no action to enforce its trademark rights against any of these third parties.

**ORIGINAL ANSWER:**

       Thru is aware that Dropbox uses the mark DROPBOX and has been aware of that since

summer of 2011. Thru has informed Dropbox of Thru's priority of rights in the mark DROPBOX

and has filed the current Petition and Opposition. Thru is aware that FilesAnywhere at one time

used DROPBOX, but has ceased its use.

       Thru has become aware of use of DROPBOX by Carnegie Mellon School of Computer

Science, Barry University, and Oakton Community College. See documents produced as THRU-

010038 to THRU-010065.

1   Thru has become aware of use of DROPBOX by Syncplicity, namely "Syncplicity is

2   Drobox for the enterprise," apparently a reference to Plaintiff.  See documents produced as

3   THRU-011941 to THRU-011945.

4

5

6   **INTERROGATORY NO. 10:**        Describe, in detail, your decision to file any trademark

7   applications for registration of the mark DROPBOX on behalf of Thru.  Include in your

8   description the reason for delaying any such application beyond the alleged first use date indicated

9   in the application and identify each person who participated in any decision to file any trademark

10  application for registration of the mark DROPBOX on behalf of Thru.

11  **OBJECTION:**

12  **RESPONSE:**

13

14  **SUPPLEMENTAL ANSWER:**

15   Thru learned of Plaintiff's claim to rights in the trademark DROPBOX in the summer of

16  2011.  At that time, it discovered that Plaintiff was only one of a number of companies claiming

17  trademark rights in that term and that other companies appeared to have earlier rights than

18  Plaintiff.  Thru decided to file an application for registration of the trademark DROPBOX in

19  November 2011 to maintain its claim to that mark and give notice to the other contending parties.

20   Prior to 2011, Thru was not aware of any contest for rights to the term DROPBOX and, as

21  a relatively new and small company, had not applied to register any trademarks.  Given the

22  relevant purchasing public for Thru's products, registering trademarks did not appear to be a

23  priority need.  Thru's predecessor Rumble International LLC had acquired U.S. Registration No.

24  2832540 RUMBLE GROUP & Design by assignment from an Australian company.  Thru did not

25  apply to register the trademark THRU until September 2013.

26

27

28

1   Lee Harrison was the senior executive at Thru and its predecessors between 2003 and the

2   present and was the person responsible for deciding whether or not to file applications to register

3   trademarks.

4   **INTERROGATORY NO. 11:**   Describe any instances in which a third party has challenged

5   the rights you claim in the mark DROPBOX.

6

7   **RESPONSE**: No one, not even Dropbox, Inc.

8

9   **INTERROGATORY NO. 12:**   Describe, in detail, the circumstances under which you first

10   became aware of Dropbox and its use of the mark DROPBOX.

11   **RESPONSE**:

12

13   Thomas Skybakmoen brought Dropbox, Inc. trademark violation to Lee Harrison's

14   attention in summer 2011.  This was the first time that Thru was aware of Dropbox, Inc. and its

15   use of DROPBOX.

16   **SUPPLEMENTAL ANSWER:**  Thru's directors and management first became aware of

17   Dropbox, Inc. and its use of DROPBOX in mid-2011.  Moreover, Thru's management is not

18   aware of any employee that was aware of Dropbox, Inc. and its use of DROPBOX at any earlier

19   date.

20

21

22   **INTERROGATORY NO. 13:**   Describe, in detail, any communications with third parties in

23   which you have claimed rights to the DROPBOX mark.

24   **OBJECTION**:

25   **RESPONSE**:

26   **SUPPLEMENTAL ANSWER:**

27

28

1  Most of the communications were in the context of telephone conversations between Lee

2  Harrison and the person/entity identified in this answer.  Documents relating to the discussions

3  have been produced.

4  K1 Capital, Los Angeles, discussed investment by K1 in Thru, Inc. including disclosure

5  of this lawsuit

6

7  Lightdale LLC, Jerard Carney, re possible acquisition of trademark

8  DROPBOX, Thru, Inc. and Dropbox, Inc.

9  Hightail (Formerly YouSendIt), CEO Chief Legal, claimed rights in the trademark

10  DROPBOX

11  Box, Inc. CEO, CFO, Chief Legal, claimed rights in the trademark DROPBOX

12

13  Filesanywhere, CEO claimed rights in the trademark DROPBOX

14  Microsoft George Morrison, Corporate Business Development off of the CEO, claimed

15  rights in the trademark DROPBOX

16  Gartner, Analysts - Jess Thompson, Benoit Lheureux, Monica Basso, Paolo Malinverno,

17  Jeffrey Mann, Laurie Wurster, Guy Creese, Susan Landry, Joe Mariano, Charles Smulders,

18  claimed rights in the trademark DROPBOX

19  Forrester, Analysts Alan Weintraub, Cheryl McKinnon, Art Schuller, Heidi Shey, claimed

20  rights in the trademark DROPBOX

21

22  PrivCo, Sam Hamadeh, discussed Thru's ownership claim, will include in research at

23  some point.

24  Goldman Sachs, Hans Sherman, discussed investment in Thru, but not till trademark

25  dispute is settled.

26  Accel Partner, Pat Pow-anpongkul, discussed investment in Thru, but not till trademark

27  dispute is settled.

28  Prevail Ventures, Mark Losh, discussed valuations in light of trademark dispute

1       Bessemer Venture Partners, Paul Lyandres, discussed investment in Thru but not till
2   trademark is settled.

3       Frontier Capital, Seth Harward, discussed investment in Thru, but not till trademark
4   dispute is settled.
5
6       Great Hill Partners, Drew C. Loucks, discussed investment in Thru, but not till trademark
7   dispute is settled.

8       LLR Partners, Michael Pantilione, discussed investment and trademark value.

9       Norwest Venture Partners, Jon Kossow, Mike Magnel, discussed investment in Thru and
10  trademark value.

11      Shea & Company, LLC, Brad McCarthy, discussed investment in Thru and trademark
12  value.
13
14      AGC Partners, Scott Card, Michael Skey, investments in Thru and the trademark value.

15      Rocket Software, John McCullough, acquisition of Thru and the value of the trademark.

16      Roth Capital, David Enzer, Attunity acquiring Thru and the value of the trademark.

17      Server Farm Realty, David Tam, OEM Thru and the DROPBOX feature and acquisition of
18  Thru.

19      UBS, Ben Freeland, acquisition of Thru and the trademark value.
20
21      Forrester Analysts, Cheryl McKinnon

22      Macquarie Capital, Darren Keogh

23      ASX Ltd, Damian Roche

24

25  **INTERROGATORY NO. 14:**        Identify all variations of the term DROPBOX that you have
26  used, including but not limited to MY DROPBOX, ENTERPRISE DROPBOX, THRU
27  DROPBOX, SECURE DROPBOX and THRU SECURE DROPBOX, and describe, in detail, the
28  manner in which you have used such variation.  Include in your description the following:  (a)

identification of every product and service you have offered in connection with the variation, and

(b) the time period (specifying at least month and year) during which you used the variation.

**OBJECTION**: Thru further objects that this Interrogatory purports to be a single interrogatory but contains discrete subparts.

**RESPONSE**:

**SUPPLEMENTAL ANSWER:**

All the trademarks listed below have been used in connection with the file transfer functionality described in response to Interrogatory No. 5.  Numerous examples of the uses of the trademark DROPBOX in various forms are found in the documents produced.

**ORIGINAL ANSWER:**

MY DROPBOX, MY THRU DROPBOX, THRU SECURE DROPBOX, SECURE DROPBOX, DROPBOX ENTERPRISE, ENTERPRISE DROPBOX, DROPBOX FOR THE ENTERPRISE, THRU DROPBOX, RUMBLE DROPBOX

**INTERROGATORY NO. 15:**        Identify all statements relating to Dropbox that you have made to the public or third parties.

**OBJECTION**:

**RESPONSE**: To the extent Thru has made statements relating to Dropbox and the trademark issue in this lawsuit, see answer to Interrogatory No. 13.

**SUPPLEMENTAL ANSWER:**  To the extent the Interrogatory seeks information about general statements made to the public that relate to or could relate to Dropbox, Thru refers to the documents produced in this action, which include Thru's webpages, advertising and presentations and social media posts.  See, for example, THRU 726886-726896, THRU 717381-717392, THRU 1064773-1064779, SKY-0185927-0185949, THRU 1064773-1064779.

Dated: May 18, 2016

Respectfully submitted,

/s/John M. Cone
JOHN M. CONE (admitted *pro hac vice*)
FERGUSON, BRASWELL & FRASER, PC
2500 Dallas Parkway #501
Plano, Texas 75093
Telephone: (972) 378-9111
Facsimile: (972) 378-9115
jcone@dallasbusinesslaw.com

IAN K. BOYD, State Bar No. 191434
KATE W. McKNIGHT, State Bar No. 264197
HARVEY SISKIND LLP
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124
iboyd@harveysiskind.com
kmcknight@harveysiskind.com

Attorneys for Defendant
THRU INC.

## PROOF OF SERVICE

I hereby certify that on this 18th day of May, 2016, a true and correct copy of the foregoing document was served via U.S. First Class Mail, postage prepaid on:

John L. Slafsky, Esq.
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto CA 94304-1050
Attorney for Dropbox, Inc.

/s/John M. Cone
John M. Cone

1

## <u>VERIFICATION</u>

2

I, LEE HARRISON, declare:

3

I am President and CEO of Thru Inc., Defendant and Counter-Plaintiff in the above-

4

captioned action. I have read the foregoing **Defendant Thru Inc.'s Second Amended**

5

6

**Supplemental Responses to Plaintiff Dropbox, Inc.'s First Set of Interrogatories** and the

7

matters set forth therein are true to the best of my knowledge, information and belief.

8

I declare under penalty of perjury that the foregoing is true and correct. Executed at Irving,

9

Texas on ___5|22|2016___.

10

11

12

13                                            LEE HARRISON

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28