DAVID H. KRAMER, State Bar No. 168452
JOHN L. SLAFSKY, State Bar No. 195513
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California  94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
dkramer@wsgr.com
jslafsky@wsgr.com

COLLEEN BAL, State Bar No. 167637
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California  94105
Telephone:  (415)947-2000
Facsimile:  (415) 947-2099
cbal@wsgr.com

Attorneys for Plaintiff and Counter-Defendant
DROPBOX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DROPBOX, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>THRU INC., a Delaware corporation,<br><br>   Defendant.<br>———————————————————<br>THRU INC., a Delaware corporation,<br><br>   Counterclaimant,<br><br>   v.<br><br>DROPBOX, INC., a Delaware corporation,<br><br>   Counter-Defendant. | Case No. 3:15-CV-01741-EMC (MEJ)<br><br>**DROPBOX, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       October 27, 2016<br>Time:      9:30 a.m.<br>Before:    Honorable Edward M. Chen<br>Dept:       Courtroom 5, 17th Floor |

**TABLE OF CONTENTS**

<u>Page</u>

I.  THRU HAS NO RIGHTS TO ASSERT AGAINST DROPBOX ..................................... 2

   A.  Thru Did Not Use "Dropbox" as a Trademark ....................................................... 2

   B.  "Dropbox" is Descriptive and Thru Has No Secondary Meaning .......................... 5

   C.  Thru's Estoppel Theory is Meritless ....................................................................... 8

II. EVEN IF THRU HAD RIGHTS, DROPBOX WOULD BE THE SENIOR USER .......... 9

III. THRU'S CLAIMS ARE BARRED BY LACHES .............................................................. 11

   A.  There is No Valid Excuse for Thru's Delay ......................................................... 12

   B.  Thru's Extended Delay Plainly Caused Prejudice ................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Application of G. D. Searle & Co.*, 360 F.2d 650 (C.C.P.A. 1966) ....................................................8

*Bada Co. v. Montomery Ward & Co.*, 426 F.2d 8 (9th Cir. 1970) ......................................................6

*Bodett v. Coxcom, Inc.*, 366 F.3d 736 (9th Cir. 2004) ......................................................................12

*Brady v. Grendene USA, Inc.*, No. 3:17-cv-0604-GPC-KSC, 2015 U.S. Dist. LEXIS 72551 (S.D. Cal. June 3, 2015) ................................................................................11

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) .................................................................................................................................................3, 4

*Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) ......................................................10

*Cooper v. United Air Lines, Inc.*, 82 F. Supp. 3d 1084 (N.D. Cal. 2015) ........................................10

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) ..........................................................13, 14

*Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118 (9th Cir. 2006).......................3, 4

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ................................. 10-11

*eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV 00-00374-VAP (EEx), 2001 U.S. Dist. LEXIS 13904 (C.D. Cal. Mar. 5, 2001) ......................................................11

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002) ...................................................6

*Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180 (N.D. Cal. 2015) .....................................................14

*FW Omnimedia Corp. v. Toyota Motor Sales U.S.A., Inc.*, No. 04-8624 GPS (JRx), 2004 U.S. Dist. LEXIS 27464 (C.D. Cal. Dec. 8, 2004) .........................................................2

*Glow Indus., Inc. v. Lopez,* 273 F. Supp. 2d 1095 (C.D. Cal. 2003) ...........................................6, 11

*Grupo Gigante Sa De CV v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004) ......................................12

*Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158 ....................................................................................4

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) ......................................................15

*In re Chippendale USA, Inc.*, 622 F.3d 1346 (Fed. Cir. 2010) ............................................................8

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ..................................12

*Kelly-Brown v. Winfrey*, No. 15-697-cv, 2016 U.S. App. LEXIS 16939 (2d Cir. Sept. 16, 2016) ...........................................................................................................................6

*Lahoti v. Vericheck, Inc.*, 586 F.3d 1190 (9th Cir. 2009) ..............................................................6, 8

*Microstrategy v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) .................................................... 3-5

*Nola Spice, L.L.C. v. Haydel Enters.*, 783 F.3d 527 (5th Cir. 2015) ..............................................6

*Novell v. Unicom Sales*, C-03-2785 MMC, 2004 U.S Dist. LEXIS 16861 (N.D. Cal. Aug. 17, 2004)..............................................................................................................13

*Prudential Ins. Co. v. Gibraltar Finan. Corp*., 694 F.2d 1150 (9th Cir. 1982) ...............................14

*Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190 (9th Cir. 2012) ......................................3

*Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215 (9th Cir. 1987) .............................................9

*Two Pesos, Inc v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) .............................................................5

*Univ. Healthsys. Consortium v. UnitedHealth Group, Inc*., 68 F. Supp. 3d 917 (N.D. Ill. 2014)..............................................................................................................15

*Vietnam Veterans of Am. v. CIA*, No. C 09-0037 CW (JL), 2010 U.S. Dist. LEXIS 143865 (N.D. Cal. Nov. 12, 2010) ...............................................................................10

**RULES**

Federal Rule of Civil Procedure 30(b)(6) .......................................................................................10

**MISCELLANEOUS**

1 Gilson on Trademarks (2016) .........................................................................................................8

McCarthy on Trademarks (4th ed. 2016) ......................................................................................11

Thru's opposition confirms that its scheme to capture Dropbox, Inc.'s name and hold it for ransom fails as a matter of law. As Dropbox, Inc. showed, Thru did not use "dropbox" continuously as a source identifier so as to establish and maintain trademark rights. Thru offers no explanation for why it regularly used its supposed trademark to refer to: (i) file transfer functionalities in competitors' products; (ii) file transfer functionalities generally; and (iii) Dropbox, Inc. in particular. The scant evidence it musters does not demonstrate that Thru continuously used "dropbox" in a manner to distinguish its goods from others. Because Thru has no trademark rights in "dropbox," the Court need go no further to dismiss Thru's claims.

Even if Thru had proven the requisite consistent use of "dropbox" as a trademark, it failed to offer any evidence showing the word is more than merely descriptive as applied to Thru's file transfer functionality. Thru ignores its own repeated admissions that "dropbox" is descriptive for a file transfer functionality; its repeated use of the term in that descriptive manner; and the use of "dropbox" by a host of others, including competitors, in the same descriptive way. All that it offers to claim "dropbox" is suggestive and protectable is the supposed implication of the PTO's silence in approving others' registrations for "dropbox." But that does not speak at all to *Thru's* use of the term. Indeed, Thru's reliance on the PTO's silence as authority is particularly misplaced given that the PTO has twice expressly held that "dropbox" is descriptive when used as Thru uses it. Given the record here, no reasonable fact finder could conclude that Thru's use of "dropbox" is anything other than descriptive. That, coupled with Thru's failure even to attempt to show secondary meaning, also warrants summary judgment for Dropbox on Thru's claims.

Thru fares no better in responding to Dropbox, Inc.'s alternative ground for summary judgment – Dropbox, Inc.'s priority via Officeware. Under any theory by which Thru could scrape together trademark rights, Officeware's rights would be earlier and stronger. Thru's challenge to the validity of Officeware's transfer of any such rights is meritless. Officeware assigned any rights to "Dropbox," along with associated goodwill, to Dropbox, Inc. in settlement of a *bona fide*, 18-month trademark litigation, and Dropbox, Inc.'s use of the term significantly overlaps with Officeware's. Officeware's assignment was thus valid and affords Dropbox, Inc.

1   priority over any rights Thru could conceivably claim.

2         Assuming Thru could somehow manage to overcome all of these dispositive flaws, its

3   claims would still be barred by laches.  Thru's opposition does not rebut the presumption of

4   laches occasioned by its more than six-year delay in taking action after learning of Dropbox,

5   Inc.'s prominence and use of the "Dropbox" name in June 2009.  Whether the relevant period for

6   a presumption of laches is two years or four, Thru's "slow walk" strategy aimed at increasing its

7   "lottery" jackpot takes it far past.  Thru has no legitimate excuse, and the prejudice to Dropbox,

8   Inc. that Thru intended to cause is manifest.  Having made the calculated choice not to challenge

9   Dropbox, Inc.'s right to use the "Dropbox" name for years, Thru forfeited any right to do so.

## I.  THRU HAS NO RIGHTS TO ASSERT AGAINST DROPBOX

### A.  Thru Did Not Use "Dropbox" as a Trademark

12         Dropbox, Inc.'s Motion established that: (i) Thru used "dropbox" to refer, variously, to

13   Dropbox, Inc., to Thru's competitors' offerings, and to file transfer functions generally; (ii) Thru

14   encouraged its customers to use the term with their own brands and logos and without reference

15   to Thru; (iii) Thru presented the term using all manner of formulations, spellings, and

16   capitalizations, and failed to provide guidelines to employees for consistent use; (iv) Thru did not

17   invest in advertising or marketing the term and received no press about it; (v) Thru did nothing at

18   all to police others' use of the term, even those who were direct competitors; and (vi) Thru never

19   applied to register the term until after it hatched its plan to sue.  Mot. at 11-13.[1]

20         Thru disputes none of that.  Nor does Thru come forward with evidence that a single

21   customer, partner, industry analyst, or journalist has ever acknowledged "dropbox" as a Thru

22   brand, let alone prior to Dropbox, Inc.'s adoption of the name in 2008.  *See FW Omnimedia*

23   *Corp. v. Toyota Motor Sales U.S.A., Inc.*, 2004 U.S. Dist. LEXIS 27464, at *23-24 (C.D. Cal.

24   Dec. 8, 2004) ("[Plaintiff] offers no evidence that the public perceives or understands [the term]

25   to be the name or mark of the Website or of the … service offered via the Website; and absent

---

[1] The notation "Ex. __" continues to refer to the corresponding exhibit to the Declaration of John L. Slafsky.  Exhibits attached to the Supplemental Declaration of John L. Slafsky begin with Ex. 85 and continue sequentially.  Exhibits attached to the Declarations of Lee Harrison and John Cone are cited as "Harrison Ex. __" or "Cone Ex. __," respectively.

such evidence, the likeliest inference is that the public understands [it] … to be merely a descriptor ….").  The evidence Thru does offer is *de minimis* at best, and does not come close to carrying Thru's burden of demonstrating that it continuously used "dropbox" as a source identifier so as to establish valid trademark rights that are senior to Dropbox, Inc.'s.  *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1125-26 (9th Cir. 2006).[2]

Many of the documents Thru offers to prove its supposedly senior rights are dated 2011 and later, *i.e.,* at or after the point it began scheming against Dropbox, Inc.[3]  Those do not demonstrate that Thru used the word "dropbox" as a trademark prior to Dropbox's adoption of its name in 2008, and thus are irrelevant.  *See Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1203 (9th Cir. 2012) (party claiming rights must establish senior trademark use); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) (first "use" of "moviebuff.com" did not establish priority, where use was not as a trademark).[4]

The very few Thru documents pre-dating Dropbox, Inc.'s 2008 launch do not reflect source-identifying use of "dropbox" by Thru.  In the handful of random, pre-2008 web pages, the word "dropbox" is difficult even to locate.  Harrison Exs. 3-4.  Trademark law does not imagine "that the public will be required or expected to browse through a group of words, or scan an entire page in order to decide that a particular word, separated from its context, may or may not be intended, or may or may not serve to identify the product."  *Microstrategy v. Motorola, Inc.*, 245 F.3d 335, 341 (4th Cir. 2001).  Further, the mere presence of the word on these pages does not demonstrate use of the term by Thru *as a trademark*.  *Id.* at 343 (mere use of a word in the

---

[2] The evidentiary problems with Thru's Declaration of Lee Harrison are too numerous to recount here, but principally involve issues of hearsay (Harrison ¶¶28, 30, 32-35, 38) and foundation (*Id.* ¶¶10, 12, 16, 21, 28-29, 31-32, 34, 44; Harrison Exs. 4, 12-13, 24-25, 30-31).

[3] *See* Harrison Exs. (with associated dates) 6 (2011), 7 (2013), 8 (2014), 9 (2014), 10 (2015), 11 (2015), 12 (2014), 13 (undated but referencing 2011 data), 14 (2013), 15 (2013), 16 (2012), 17 (2011), 24 (undated), 25 (undated).

[4] While Thru may have hoped to establish rights to "dropbox" in 2004, and thus added mention of "MyDropbox" in the signatures of certain of its email messages, that use was haphazard at best.  *See, e.g.*, Ex. 34 (Harrison) at 114:21-115:17; Ex. 90 (Thru 30(b)(6)) at 81:1-82:5, 84:19-85:21.  By 2009, Thru's CEO had discontinued the effort, resuming it only in late 2011 when contemplating a lawsuit against Dropbox, Inc.  *Id.* at 84:2-86:9.  Such use did not establish trademark rights.  *See Brookfield*, 174 F.3d at 1052 (use of mark in limited emails insufficient to establish trademark rights).

sale or advertising of goods does not create trademark rights; use must be as a trademark, identifying and distinguishing the owner's goods from those of others); *Brookfield*, 174 F.3d at 1052. Beyond the web pages, Thru offers only data sheets and technical guides from the relevant time period which list "Dropbox" as a function alongside others like "Send," "Forgot Password," and "Request Account." Harrison Exs. 2, 5-6. Again, that is not trademark use.[5]

      Thru's handpicked documents actually undermine its position by showing, again, that it encouraged customers to publicly associate the term "dropbox" with the customers' own businesses, rather than with Thru. They show, for example, that Thru instructed customers to include links to the customers' "MyDropbox" in their outbound emails, without requiring mention of Thru. Harrison Exs. 24-25. If recipients of such customer emails associated "MyDropbox" with anyone, it would have been with the customers, not Thru. Thru also highlighted a customer case study from its website, in which its customer claimed the dropbox feature as its own. Harrison Ex. 18 ("Our Dropbox feature allows posting of commercials and print ads…."). These come on top of Thru's testimony admitting that it always placed its customers' brands and logos, not its own, alongside the word "Dropbox" on public-facing webpages. Ex. 34 (Harrison) at 116:3-21, 118:20-119:11. Such uses undermine Thru's claim to have built trademark rights in the term prior to Dropbox, Inc.'s 2008 debut.

      Perhaps even worse for Thru are the documents it submitted showing, that when it

---

[5] Thru's exhibits reveal it has used, *inter alia*, "My Dropbox" (Harrison Ex. 3), "Thru Dropbox" (Harrison Exs. 4, 6-7, 19-20), "a DropBox" (Harrison Ex. 5), "Enterprise Dropbox" (Harrison Ex. 4), "Secure Enterprise Dropbox" (Harrison Ex. 17) and "Thru Secure Enterprise Dropbox" (Harrison Ex. 8); *see also* Mot. at n.9 (collecting still more variations). These are not properly deemed the same mark for purposes of trademark law. *See Brookfield*, 174 F.3d at 1048-49 (noting differentiations that extinguished trademark priority, holding test for continuing use is "exceedingly strict," and rejecting continuation from MOVIE BUFF'S MOVIE STORE to MOVIEBUFF.COM). Thru's only citable case on this point likewise stresses that marks are the same for priority purposes only in "exceptionally narrow" cases where one is the "legal equivalent" or "indistinguishable" from another. *See Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1164-65 (declining to overturn jury verdict in favor of tacking). That does not help Thru. Indeed, Thru's constantly shifting formulations undermine rather than foster the single commercial impression required to establish rights in "dropbox." *See Microstrategy*, 245 F.3d at 342 ("A designation is not likely to be perceived as a mark of origin unless it is repetitively used, as opposed to only an occasional or isolated use."). Thru certainly has not offered evidence demonstrating it continuously used "dropbox," standing alone as a trademark, before Dropbox, Inc. began using it in 2008. *See Bazaar Del Mundo, Inc*., 448 F.3d at 1125-26 (no prior trademark use when claimant identified only "a few instances of use of the marks in the distant past that were 'casual' or had 'little importance apparently attached to [them]'").

explicitly called out and claimed its trademarks for the world, it did not include "dropbox" on the lists. *See* Harrison Exs. 6-7 (2011 and 2013 Thru User Guides). To the same effect are other documents showing that, while Thru used the "TM" designation on the phrase "Thru Message File System," it did not attach the TM designation to "dropbox." Harrison Exs. 19-21, 23;[6] *see also Microstrategy*, 245 F.3d at 345, nn.5-6 (relying on failure to include supposed mark on lists and sporadic use of "TM" notation in rejecting claim of trademark use).

Thru's scheme to obtain payment from Dropbox, Inc. depends upon it possessing valid, senior trademark rights. It thus undoubtedly wishes today that it had continuously used "dropbox" as a source identifier so as to establish senior rights in the term. But given the undisputed facts, its attempt to "newly develop" such rights long after the fact is not sufficient to raise a triable issue. Thru has no rights in "dropbox," and its claims fail for that reason alone.

### B.  "Dropbox" is Descriptive and Thru Has No Secondary Meaning

Thru does not dispute that it failed to establish secondary meaning in "dropbox." That silence concedes the point and, together with the descriptive nature of "dropbox" for Thru's file transfer functionality, dooms any trademark claims as a matter of law. *Two Pesos, Inc v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). To avoid that end, Thru contends that "dropbox" should be deemed suggestive of its file transfer functionality. But it cannot get past the overwhelming evidence of descriptiveness in this case.

To start, Thru has no answer for the repeated admissions of descriptiveness by its own executives. Mot. at 14-16. A Thru marketing presentation highlighted the fact that the word "dropbox" is "often []used to describe online file transfer/exchange of files and messages." Ex. 32 at 4. Thru's Marketing VP testified that "dropbox" is often "used by people to describe the functionality in which a file is being moved." Ex. 31 (Skybakmoen II) at 300:3-10. Thru's CEO adopted an ordinary dictionary definition of a dropbox ("a secure receptacle" into which items can be deposited), and then admitted that the very aspect of its software that serves the function

---

[6] When Thru did occasionally append a "TM" to "dropbox," it was sporadic, at best. *See, e.g.*, Harrison Exs. 3, 5-7, 9, 12-15, 18-20, 24 (Thru documents with variations of "dropbox," all without the TM symbol). In any event, as Dropbox, Inc. noted, use of that designation does not aid Thru's cause. Mot. at 13 & n.10.

1  of a dropbox, so defined, is what Thru calls "dropbox." Ex. 34 (Harrison) at 32:9-12; *see also id.*
2  *at* 38:17-25, 82:14-18; Mot. at 5-6. And Thru itself regularly used the term in a descriptive
3  fashion in marketing materials. Mot. at 6 & n.3. In response to all of this, Thru offers only a
4  single sentence, claiming its admissions are not dispositive. Opp. at 11.[7] But they are, because
5  they admit that prospective purchasers perceive its use of "dropbox" as merely descriptive. *See*
6  *Bada Co. v. Montgomery Ward & Co.,* 426 F.2d 8, 11 (9th Cir.1970).

7       Thru says even less about the multitude of other parties that independently chose
8  "dropbox" as the label for the file transfer functions in their own software products. *Compare*
9  Mot. at 4, 6 n.5 *with* Opp. at n. 4. That, plus Thru's failure to offer a single, usable synonym for
10 "dropbox," confirms the descriptiveness of the term under the Ninth Circuit's "competitors'
11 need" test. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1143 (9th Cir. 2002).

12      Rather than offer evidence, Thru argues that it is entitled to a presumption that "dropbox"
13 is suggestive for the file transfer function in its product because the PTO registered "dropbox"
14 for others' goods, thereby supposedly implicitly deeming the term inherently distinctive for
15 Thru's. But Thru's own Ninth Circuit authority rejects that proposition, holding that a
16 presumption is improper where the prior PTO determination is not addressed to the claimant's
17 own mark. *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009) (a "statutory
18 presumption of distinctiveness applies only when the mark holder's own mark has been
19 registered"). In fact, the Second Circuit recently held that the PTO's silent approval even of a
20 party's own registration did not create a triable issue of fact about the mark's distinctiveness
21 given plaintiff's descriptive uses of the mark, its admissions of descriptiveness, use by third
22 parties, and the general meaning of the phrase. *Kelly-Brown v. Winfrey*, 2016 U.S. App. LEXIS
23 16939, at *9-12 (2d Cir. Sept. 16, 2016) (affirming summary judgment of descriptiveness for
24 OWN YOUR POWER notwithstanding claimant's registration); *see also Nola Spice, L.L.C. v.*

---

[7] Thru misstates the one case it mentions. *Glow Indus., Inc. v. Lopez,* 273 F. Supp. 2d 1095, 1114 n.98 (C.D. Cal. 2003) did not involve admissions from a litigant that its putative mark was descriptive, as Thru claims. The statements (from a predecessor rather than the litigant) were that use of a product called "GLOW KIT" would lead to "glowing" skin or a "subtle glow." *Id.* at 1118. That "play on words," as the court called it, is hardly the same thing as admitting, as Thru did here repeatedly, that its supposed trademark is used by many others and understood by the relevant public to describe file transfer functionalities.

1  *Haydel Enters.*, 783 F.3d 527, 537-43 (5th Cir. 2015) (same).[8]

2  Further, while relying on implications from the PTO's silence with respect to others' applications, Thru ignores what the PTO actually said on the very issue presented here, when it rejected registration of "DROPBOKS" back in February 2007:

> This mark is merely descriptive of the services because it immediately tells consumers that the services provide an electronic drop box….This term is widely used by others to name similar storage services, that allow users to store or place files in a digital drop box for retrieval later, or for sharing….Given such wide use by others, this term cannot serve as a sole source identifier for the applicant.

Ex. 76; *see also* Ex. 75 (rejecting PROMOTER DROP BOX as "merely descriptive" as applied to a file transfer service for promoters). The PTO's words on descriptiveness speak far louder than its silence.

Finally, Thru invokes the Ninth Circuit's "imagination test" for descriptiveness, claiming that in 2004, a mental leap was required to understand that "dropbox" in software referred to a file transfer functionality. Opp. at 9. That too is misguided. Thru's CEO himself refuted this contention, testifying that, back in 2004, "Thru labeled something that served the function of a dropbox…with the word dropbox in its FTH software." Ex. 34 (Harrison) at 32:9-12. He likewise testified that, at the time, "the dropbox function within FTH [was] a secured receptacle into which electronic files could be deposited by others for the intended recipient to receive." *Id.* at 31:21-25. That is, Thru used "dropbox" as the name for a function that operated as a dropbox, according to a dictionary definition for the term. Ex. 79 (Google definition). There was not even a small step, let alone a leap, involved.[9] Thru's use of "dropbox" immediately conveys

---

[8] Thru's claim to a presumption is particularly inappropriate given that that the third party uses for which the PTO approved registration of "dropbox" were not basic file transfer functionalities like Thru's. *See* Cone Exs. 1, 3-5 (registration of "dropbox" for *inter alia* software: (i) for "database management, primarily in the field of biomedical research"; (ii) "for uploading and transferring advertising programs"; and (iii) "for uploading video, audio and print media and meta data"). Thru actually asserted as much in its RFA responses. Ex. 41 (RFA No. 5 stating that these "goods and services are…not related to or competitive with Thru's services").

[9] By 2004, "dropbox" had long been used to describe a file transfer function by Apple, Blackboard, in the press, and in the industry. *See* Mot. at 6 n.5; Exs. 80-83. Thru speculates that the existence of definitions in some early references indicate the term was unknown and required a mental leap. But Thru's own "user guide" shows otherwise. Harrison Ex. 2 at 2. The guide defines various functionalities in Thru's software such as "Forgot Password" and "Request Account." Those concepts are hardly foreign to users, but are defined so users know how to access or use them. So too with "dropbox." *See, e,g.,* Ex. 83 (Blackboard manual describing the
(continued...)

1  information about the operation of the file transfer functionality in its product.  That renders it
2  descriptive under the imagination test.  *Lahoti*, 586. F.3d at 1201 (test asks "whether, when the
3  mark is seen on the goods or services, it immediately conveys information about their nature.").
4       In any event, the status of "dropbox" in 2004 is not relevant.  Thru is seeking only
5  prospective, injunctive relief based on rights it claims to have now.  To be entitled to that relief, it
6  must show that its supposed trademark in "dropbox" is inherently distinctive and protectable
7  today.  *See In re Chippendale USA, Inc.*, 622 F.3d 1346, 1354 (Fed. Cir. 2010) ("Judging
8  inherent distinctiveness at the time of first use would be fundamentally unfair."); *cf.* 1 Gilson on
9  Trademarks § 2.01[4] (2016).  Thru has made no attempt to show that a mental leap is required
10 today to understand "dropbox" when used for a file transfer function in software.  On the
11 undisputed record, Thru's use of "dropbox" is merely descriptive and unprotectable given its
12 failure to show secondary meaning.
13       **C.     Thru's Estoppel Theory is Meritless**
14       Thru's attempt to establish trademark rights via judicial estoppel is especially infirm.  To
15 succeed, Thru would have to prove: (1) Dropbox, Inc. is taking a position that is clearly
16 inconsistent with an earlier one taken before a court; (2) Dropbox, Inc. succeeded in persuading a
17 court to accept the earlier position; and (3) by asserting its current, inconsistent position
18 Dropbox, Inc. would derive an unfair advantage or impose an unfair detriment on Thru.  Opp.
19 at 13.  Thru cannot raise a triable issue as to any, much less all, of these elements.
20       Dropbox, Inc. contends here that Thru's use of the name "dropbox" for the file transfer
21 functionality in Thru's product is merely descriptive.  It has never said otherwise.  It never took a
22 position about Thru's use of "dropbox" before the PTO.  And whenever it has spoken about a
23 party's use of "dropbox" for a file transfer functionality like Thru's, it has said that the use is

---

25  (...continued from previous page)
digital "dropbox" function).  Thru likewise argues without evidence about the supposed
26 significance of quotes around "dropbox" in certain references, claiming they show the term
requires imagination.  Again, not so.  Quotation marks regularly are used when a physical world
27 concept is extended to the digital realm (e.g., "electronic mail").  They do not transform ordinary
terms into suggestive ones.  *See Application of G. D. Searle & Co.*, 360 F.2d 650, 655 (C.C.P.A.
28 1966) (record "does not support appellant's position that the addition of quotation marks to an
otherwise common descriptive name converts it into a trademark.").

1   merely descriptive. Mot. at 4.[10] It has been entirely consistent. Thus, the fundamental element
2   required for judicial estoppel is not present.

3   In connection with its trademark application, Dropbox, Inc. told the PTO that DROPBOX
4   was properly registered for *its specific goods and services*, software that serves "the purpose of
5   file back up and synchronization." Exs. 1, 3. Even as to its own service, Dropbox, Inc. never
6   took a position before the PTO on the acquired or inherent distinctiveness of DROPBOX. *Id.* It
7   made no attempt to persuade the PTO that the term was inherently distinctive as applied to a
8   function in Thru's product or anyone else's. And the PTO made no such finding. Accordingly,
9   the second required element for estoppel is absent as well.

10  Finally, Thru has failed to make any showing of the requisite unfair prejudice. Had there
11  been some inconsistency in position, Dropbox, Inc. would have secured no advantage. It would
12  have been entitled to registration of DROPBOX regardless of whether the PTO thought the mark
13  suggestive or descriptive for Dropbox, Inc.'s service, given the overwhelming secondary
14  meaning that it had, and that Thru concedes. Mot. at 3, 6 n. 4. Thru did not even oppose
15  Dropbox, Inc.'s registration, and it is free to argue its positions now, regardless of merit, before
16  this Court. In sum, Thru's judicial estoppel theory is ill-conceived and unsupported.

17  **II.    EVEN IF THRU HAD RIGHTS, DROPBOX WOULD BE THE SENIOR USER**

18  Dropbox, Inc. also demonstrated that even if Thru could establish trademark rights to the
19  term "dropbox," Dropbox, Inc. would still be the senior user by virtue of its assignment from
20  Officeware. Mot. at 18. Thru's brief does nothing to alter that conclusion.

21  Thru starts by misrepresenting Officeware's trademark application, which actually
22  declared Officeware's first use of "dropbox" was "[*a*]*t least as early as* 08/04/2004." Cone Ex. 2
23  (emphasis added). Officeware explained it used this date because it "was easier to pinpoint."
24  Ex. 89 (Officeware) at 56:5-14. After further review of business records, customer

---

[10] Thru argues that, because Dropbox, Inc. claimed DROPBOX was protectable for the Dropbox, Inc. service, it was "inherently" arguing that the term is protectable for others' products. But Dropbox, Inc. never said anything remotely like that, and such a position would be wrong as a matter of law. *See Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) (whether a mark is suggestive or descriptive "can be determined only by reference to the goods or services that it identifies.").

communications, and code releases, Officeware determined that it first used "Dropbox" in commerce in January 2004 in connection with a sale to the City of Flower Mound. *Id.* at 56:15-20.[11] That first use date is undisputed and is supported both by the Declaration of Timothy Rice, Officeware's founder, and by the deposition testimony of its 30(b)(6) designee, Tim McCrory. *See* Cone Ex. 26 at DRBX078033 ¶¶3-4 (Rice Decl.); Ex. 89 (Officeware) at 27:11-13; 23:18-21.

Thru's response to this testimony is puzzling. It ignores the Rice Declaration altogether, despite conceding he has relevant personal knowledge. *See* Opp. at 15 n.6. It also misapprehends the nature of a Rule 30(b)(6) deposition, claiming the Court should disregard Mr. McCrory's testimony because he was not employed by Officeware in 2004. Opp. at 15-16. The law is clear that "a Rule 30(b)(6) witness represents the knowledge of the…corporation and is not required to have 'personal knowledge' on the matter to which he or she is testifying." *Vietnam Veterans of Am. v. CIA*, 2010 U.S. Dist. LEXIS 143865, at *33 (N.D. Cal. Nov. 12, 2010); *Cooper v. United Air Lines, Inc.*, 82 F. Supp. 3d 1084, 1096 (N.D. Cal. 2015) (overruling objection to 30(b)(6) declaration on summary judgment; "[a]s a Rule 30(b)(6) designee, [the witness] is not required to have personal knowledge"). Officeware's designee prepared for more than twenty hours for his testimony, extensively reviewed business records, and interviewed those at the company from its earliest days. *See* Ex. 89 (Officeware) at 10:1-5, 10:25-11:4, 19:14-20:7, 76:19-77:10 (discussing prep). His testimony was proper, consistent with Officeware's business records (Exs. 9-10), and undisputed.

Finally, Thru argues that Officeware's assignment of rights to Dropbox, Inc. was invalid because it did not involve the transfer of technology or customer information. Opp. at 16. That is not the law. The validity of the assignment is established first by the fact that Officeware assigned its rights in settlement of a *bona fide* infringement lawsuit against Dropbox, Inc. *See* E.

---

[11] Thru argues that the "Dropbox feature was not publicly released on the Flower Mound-website until August 2004." Opp. at 15-16. That is doubly wrong. First, Thru's citation discusses publication of marketing materials on the Officeware website. See Ex. 89 (Officeware) at 28:2-29:6. The undisputed evidence is that once Officeware uploaded the Dropbox feature in January 2004, it was available on *the City of Flower Mound's* public-facing website. *Id.* at 24:11-21. Second, the question for priority purposes is when Officeware sold its "Dropbox" feature, not when the customer deployed it. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001) ("[U]se in commerce, in the context of a trademark, means a bona fide sale or transportation in commerce which may lawfully be regulated by Congress.").

*& J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992); Ex. 5 (Officeware Complaint) at ¶¶18, 20, 23.  Thru has no response on this point.  Second, contrary to Thru's view, "[i]t is not necessary that the entire business or its tangible assets be transferred; it is the goodwill of the business that must accompany the mark." *E. & J. Gallo Winery,* 967 F.2d at 1289.  Officeware's assignment expressly included its goodwill.  Ex. 7.  Moreover, where the assignee and assignor are producing substantially similar products, goodwill is necessarily transferred.  *eMachines, Inc. v. Ready Access Memory, Inc.*, 2001 U.S. Dist. LEXIS 13904, at *35-37 (C.D. Cal. Mar. 5, 2001); *see also* McCarthy on Trademarks § 18:27 (4th ed. 2016).  Officeware's "dropbox" feature offered a substantially similar functionality to one that Dropbox, Inc. offers to this day.  *Compare* Ex. 89 (Officeware) at 13:20-14:18, 17:11-18:25; Ex. 12, *with* Vashee (Dkt. 98) ¶¶3, 5, 9.  Thru admits as much.  *See* Ex. 67 (Thru and Officeware offered the "same [dropbox] functionality."); Opp. at 14 (Thru's "dropbox" function is "identical" to that offered by Dropbox, Inc.).  Officeware's assignment of any rights it held in "dropbox" was thus accompanied by its goodwill and is valid.  *See Brady v. Grendene USA, Inc.*, 2015 U.S. Dist. LEXIS 72551, at *23 (S.D. Cal. June 3, 2015); *eMachines, Inc.*, 2001 U.S. Dist. LEXIS 13904, at *34; *cf. Glow Indus.*, 273 F. Supp. 2d at 1114.  Thus, Dropbox, Inc. would have rights senior to any Thru might claim, and Dropbox, Inc. is entitled to judgment as a matter of law.[12]

### III.    THRU'S CLAIMS ARE BARRED BY LACHES

Even if Thru could establish senior rights to the word "dropbox," its claims should all be dismissed for its unreasonable and prejudicial six-year delay in filing suit.

Thru contends "there is no evidence" or "at least a factual dispute" that it "knew or should have known of its claim prior to July 2011."  Opp. at 18.  That is not defensible.  After repeatedly stating under oath that it first learned about Dropbox in mid-2011, Thru admitted: (i) it learned of Dropbox, Inc.'s use of the name and the company's prominence in June 2009 via Thru's "competitive analysis;" (ii) lost a potential customer to Dropbox, Inc. in January 2010; and (iii)

---

[12] Dropbox, Inc. has made clear it does not believe that "dropbox" as used by Thru or Officeware was inherently distinctive.  Mot.at 4, 13-17.  But *if* the Court finds that "dropbox" is inherently distinctive as applied to a file transfer functionality in software, then Officeware, not Thru, was the senior user, and Dropbox, Inc. as Officeware's successor, has priority over Thru.

continued to discuss Dropbox, Inc. at the highest levels of Thru in January 2011. *See* Mot. at 6-7. Thru knew of its potential claim throughout this period, dating back at least to June 2009.

Relying on a self-serving declaration from its CEO, Thru now contends it did not realize Dropbox, Inc. competed for business customers, and was therefore unaware of a potential trademark claim until "[Dropbox]'s use of DROPBOX had become substantial enough to be a commercial problem in early 2011." Opp. at 19; *see* Harrison ¶28. The story is inconsistent with the documentary record showing Thru's awareness years earlier of Dropbox, Inc. as a competitive threat. Exs. 42-45; Ex. 34 (Harrison) at 157:21-159:16. More importantly, Thru's new story contradicts its CEO's deposition testimony that Dropbox, Inc.'s use of "dropbox" was an "overwhelmingly obvious violation" of Thru's trademark rights *as of June 2009*. Ex. 39 (Thru 30(b)(6)) at 139:18-140:25 ("It was an opinion at that time"). For that reason as well, it should be disregarded. *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 748 (9th Cir. 2004) (rejecting declaration that contradicted deposition testimony).

Regardless, the question for laches is when Thru knew "or should have known" of its claim against Dropbox, Inc. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). By the end of 2009, Dropbox, Inc. had more than 3 million registered users, had the dropbox.com domain name, had been widely featured in the mainstream media (including the New York Times, Forbes, CNN and the Washington Post) and had received a host of high-profile awards. Houston (Dkt. 99) ¶¶20-23; Ex. 91 (Jan. 2009 NY Times article detailing business use of Dropbox, Inc. and explaining that "companies are living out of" the Dropbox service). Thru is charged with knowledge of the scope of Dropbox, Inc.'s operation, including its extensive, early sales to business customers, that would have been apparent to Thru from the slightest effort to police its supposed trademark. *See Grupo Gigante Sa De CV v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004); Houston ¶¶10, 20-23; Vashee ¶¶8-9. Even if Thru really did remain ignorant, it should not have, given Dropbox, Inc.'s prominence and the abundance of attention it received. Because Thru delayed bringing an action for six years, laches presumptively applies.

### A. There is No Valid Excuse for Thru's Delay

Thru is silent about having deliberately and extensively delayed a claim against Dropbox,

Inc. to maximize its expected "lottery" winnings from a Dropbox, Inc. IPO.  That undisputed fact sets Thru's behavior far apart from anything described in the cases it cites, and it should conclusively establish Thru's delay as unreasonable.  Mot. at 8-9, 22.  But if the Court were willing consider Thru's excuses, they would be of no help to Thru.

      Thru first contends that Dropbox, Inc. was aware of Thru's potential claim as of late 2011 because Thru wrote to Dropbox, Inc. seeking to deal its supposedly superior rights to "dropbox."  Opp. at 18-19.  That correspondence is irrelevant.  Even if Thru had threatened an infringement action, which it did not, that would not stop the laches clock because laches is "based on the plaintiff's delay in beginning litigation, and not on the information a defendant has regarding a claim."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001) (plaintiff's telegrams to defendant and charge of infringement via trade journal did nothing to excuse its delay).  "The delay, which the defense (of laches) contemplates, is not delay in bringing claims to the attention of the defendant.  It is . . . delay on the part of the plaintiff in instituting litigation on his claims . . . ."  *Id.* at 953.  For that reason, Thru's claim that it "repeatedly offered to meet with DBI on a business to business basis to resolve the ownership question" (Opp. at 19) is also irrelevant.[13]

      Citing *Novell v. Unicom Sales*, Thru contends that it was excused from suing while Dropbox, Inc. was litigating with other parties over the "dropbox" name.  Opp. at 20.  But *Novell* does not help Thru.  In that case, Novell's delay in filing suit was excused where (i) *the plaintiff Novell* was already litigating against third parties over whether it had rights; (ii) the defendant had promised to stop the alleged infringing use; and (iii) Novell promptly brought suit once the defendant broke that promise.  2004 U.S Dist. LEXIS 16861, at *18-21 (N.D. Cal. Aug. 17, 2004).  *Novell* has no application here, where Thru chose not to participate in ongoing litigation or to assert its claimed rights to "dropbox."  And after that litigation was resolved in mid-2013, Thru continued its strategy of delay to increase its imagined payoff, waiting two more years to

---

[13] Thru suggests that settlement discussions between the parties account for its delay.  That is spurious.  The parties had intermittent correspondence, with gaps of months and years, that went nowhere.  *See* Slafsky Supp. ¶¶2-5; Exs. 85-88.  Thru's cases where courts excused some delay while the parties actively negotiated are thus inapposite.  Moreover, Thru was not negotiating in good faith.  It was delaying to try to sweeten its expected payoff.  *See, e.g.,* Ex. 51 ("According to DB, the ball is in our court . . . . The best leverage we have is to sit tight and wait for the IPO announcement and be prepared to file suit that day. . . .  That will cost them market cap.").

assert a claim, and only sued after Dropbox, Inc. sought declaratory relief.

Thru also suggests that the administrative proceeding it filed in February 2014 at the PTO to cancel Dropbox, Inc.'s DROPBOX registration somehow excuses its six-year delay, but it does not. The PTO cancellation proceeding was itself outside the period triggering the presumption of laches. It also explicitly did not challenge Dropbox, Inc.'s right to use the "dropbox" name. *See* Mot. at 21-22, n. 17. That proceeding was neither necessary, nor necessitated delay. Thru cites no authority to suggest that it could excuse Thru's failure to file suit, and Ninth Circuit authority holds that it does not. *See Danjaq*, 263 F.3d at 949, 953 (though plaintiff had filed a "correction registration" with Copyright Office, length of delay determined by date plaintiff initiated district court action). Of course, Thru had known all along it would have to sue Dropbox, Inc., and prepared to do so. Ex. 47 (Thru CEO in Jan. 2012: "an action could be had soon"). It then chose to lay in wait for years. Mot. at 8-9.

Finally, Thru invokes the "progressive encroachment" theory, claiming that Dropbox, Inc. offered only a consumer product, and not an enterprise product, until 2015. Opp. at 21-22. That is false. Dropbox, Inc. has sold and marketed its products to businesses as well as individuals from its start in 2008. *See* Houston ¶10; Vashee ¶9. While Dropbox, Inc. expanded the diversity of its product offerings over time, that expansion reflected ordinary course development of its existing product, not an expansion into a new market. *See* Vashee ¶¶4, 9. The progressive encroachment theory only applies where a junior user significantly changes its business to come into direct competition with a senior user, where competition previously did not exist, and was unexpected. It does not apply where, as here, Dropbox, Inc. has simply grown its existing business. *See, e.g.*, *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1191-93 (N.D. Cal. 2015) (rejecting progressive encroachment theory where "any expansion into the business-to-business-to-consumer market was just the natural growth of [defendant's] existing business"); *Prudential Ins. Co. v. Gibraltar Fin. Corp.*, 694 F.2d 1150, 1154-55 (9th Cir. 1982) (rejecting progressive encroachment theory; "[I]t is true that [trademark defendant] has grown tremendously, but

growth alone does not infringement make.").[14]  In sum, Thru's delay was inexcusable.

### B.  Thru's Extended Delay Plainly Caused Prejudice

Thru closes by arguing that its delay did not cause prejudice because Dropbox, Inc. would not have done anything different if Thru had filed suit earlier.  Thru notes that Dropbox, Inc. continued to invest in the "dropbox" brand even while others were asserting rights in "dropbox." *See* Opp. at 23-24.  That misses the point.  Other parties' claims were all resolved by mid-2013.  Thru waited them out, and then waited further, until August 2015, to file suit.  If Thru had timely asserted its rights, rather than seeking to increase its leverage through delay (the "slow walk" to the IPO), Thru's claims to "dropbox" would have been resolved years ago.  If Thru somehow demonstrated superior rights and obtained an injunction, Dropbox, Inc. would obviously have complied and devoted its time and money to building goodwill in a different name as necessary.

Dropbox, Inc.'s severe prejudice from Thru's six-year delay is clear given the undisputed record of Dropbox, Inc.'s extensive investment in its name.  Mot. at 24-25; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) ("[P]rejudice resulting to [defendant] as a result of [plaintiff]'s unreasonable delay is clear" where defendant invested "significant amounts of time and money in product development and advertising" during time plaintiff delayed).  Thru intended to cause that prejudice.  Mot. at 24-25 & n.18.  Summary judgment of laches should therefore be entered, barring all of Thru's claims.

Dated:  October 6, 2016

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *David H. Kramer*
DAVID H. KRAMER

Attorneys for Plaintiff and Counter-Defendant
DROPBOX, INC.

---

[14] The one case that Thru cites where progressive encroachment was found bears no resemblance at all to this one.  *See Univ. Healthsys. Consortium v. UnitedHealth Group, Inc.*, 68 F. Supp. 3d 917, 928-29 (N.D. Ill. 2014) (applying progressive encroachment where trademark defendant revised its trademark guidelines to formally introduce a new "abbreviated masterbrand logo" featuring the disputed "UCH" mark, departed from prior guidelines requiring that the full name be spelled out, broadened the target market of consumers, expanded the "reach and spending" of products, and registered new "UHC" trademarks).