UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DROPBOX, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>THRU INC.,<br><br>  Defendant. | Case No. 15-cv-01741-EMC<br><br>**SUPPLEMENTARY ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 97 |

## I.   INTRODUCTION

Plaintiff Dropbox, Inc. ("Dropbox") brought this action for declaratory relief seeking to establish its right to use the term "dropbox" as a trademark. Docket No. 1. Defendant Thru Inc. ("Thru") brought counterclaims for trademark infringement under the Lanham Act and California common law, and for unfair competition under Cal. Bus. & Prof. Code § 17200 et seq. and cancellation of Dropbox's trademark registration under 15 U.S.C. § 1119. Docket No. 33. Dropbox moved for summary judgment on Thru's counterclaims, Docket No. 97 ("Motion"), and this Court granted summary judgment, holding that Thru's claims were barred by laches. Pursuant to the parties' request, and to provide guidance with respect to Dropbox's pending claim for declaratory relief, the Court now issues this supplementary order addressing the alternative grounds for summary judgment, which were advanced in Dropbox's motion but not addressed in the prior order. The Court concludes that while a triable issue of fact exists as to whether Thru has any protectable interest in the term "dropbox," Dropbox is nonetheless entitled to summary judgment on the basis of its senior rights.

## II.   DISCUSSION

The Court's prior order granting summary judgment sets out the factual and procedural

background of this case.  *See* Docket No. 135.  The Court accordingly proceeds directly to discussion of the merits of Dropbox's claims.

A.     Legal Standard

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (quoting *R.W. Beck & Assocs. v. City & Borough of Sitka*, 27 F.3d 1475, 1480 n.4 (9th Cir. 1994)).

"A moving party without the ultimate burden of persuasion at trial" – such as Dropbox in this case – nonetheless "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party may discharge its initial burden by "show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*  Where "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103 (citations omitted).  The ultimate question at summary judgment is whether "the record taken as a whole could . . . lead a rational trier of fact to find for the non-moving party"; if not, then "there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287 (1968)); *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005).

Dropbox argues that it is entitled to summary judgment for three reasons: (1) Thru has no trademark rights in "dropbox" because it failed to use it as a trademark and because "dropbox" is descriptive and Thru has not established secondary meaning; (2) even if Thru could demonstrate a

2

protectable interest in "dropbox," Dropbox would have seniority by virtue of its acquisition of Officeware's rights; and (3) Thru's claims are barred by laches. As noted, the Court has already determined that Thru's claims are barred by laches. The Court now addresses each of Dropbox's first two arguments.

B.  Thru's Ownership Interest in "Dropbox"

1.  Whether "dropbox" is Inherently Distinctive

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1124 (9th Cir.2006)). Whether a party can establish a protectable ownership interest depends first on the type of mark sought to be protected.

In order to be protected, a mark must be "distinctive" – that is, it "must be capable of distinguishing the applicant's goods from those of others." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Courts categorize marks as falling into one of five "categories of generally increasing distinctiveness[:] . . . (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* Generic marks, by contrast, are categorically "not registrable as trademarks." *Id.* Descriptive marks fall in the middle. "In order to receive protection, the holder of a descriptive mark must demonstrate 'secondary meaning,' that is, show that an association between the mark and the product has been established in the consumers' minds." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987). "Which category a mark belongs in is a question of fact." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).

Dropbox points to record evidence that, it argues, demonstrates (1) that "dropbox" is "merely descriptive" and (2) that "Thru has not established secondary meaning in "dropbox." Motion at 14-17. Thru argues instead that as of 2004, when it began using the term, "dropbox"

3

was suggestive, and thus inherently distinctive.[1]

Thru first argues that, because the Patent and Trademark Office ("PTO") has, on five previous occasions, registered a trademark in the word "dropbox" for products similar to that offered by Thru, and on those occasions did not require proof of acquired distinctiveness through secondary meaning, the PTO "implicitly" found that "dropbox," as applied to such products, "is inherently distinctive." Docket No. 107 ("Opp.") at 7. Thru thus argues that it is entitled to rely on a "presumption of distinctiveness." *Id.* at 8. However, while it is true that "a plaintiff alleging infringement of a federally-registered mark is entitled to a presumption that the mark is not generic," *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005), "the statutory presumption of distinctiveness applies only when the mark holder's own mark has been registered," *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009).

*Lahoti* does say that a Court "*may* also defer to the PTO's registration of highly similar marks," *id.* (emphasis added), but it would not be appropriate to rely on the previous PTO cases here. First, two of the listed registrations are for Dropbox's own products; in those cases, it reasonable to conclude that there *was* substantial secondary meaning, since Dropbox already had tens of millions of users at the time of registration. As to the remaining three, the PTO did not explicitly find that the marks were inherently distinctive. By contrast, however, the PTO *has* explicitly ruled "dropbox" to be descriptive when it rejected registration of "DROPBOKS" in 2007, for a product that is substantially similar to those provided by both Thru and Dropbox. Specifically, the PTO stated that "[t]his mark is merely descriptive of the services because it immediately tells consumers that the services provide an electronic drop box . . . . This term is widely used by others to name similar storage services, that allow users to store or place files in a digital drop box for retrieval later, or for sharing." Ex. 76.[2] Because distinctiveness is, in every case, "a fact-intensive question," *Lahoti*, 586 F.3d at 1204, and because the PTO's past evaluation

---

[1] Thru does not attempt to argue that, if "dropbox" is merely descriptive, it has established the necessary secondary meaning.

[2] Except where otherwise noted, "Ex." refers to exhibits attached to the Slafsky declaration, Docket No. 100.

4

of similar marks is at best mixed and did not apply to the period in question (2004), the Court will not defer to the agency's past determinations, and will instead consider whether "dropbox" is descriptive or suggestive as actually used by Thru.

Dropbox argues that the term "dropbox" as used by Thru is merely descriptive largely on the basis of Thru's own statements. For example, in his deposition, Thru's CEO Lee Harrison agreed that Thru's "use of the word dropbox on the Thru website on May 24, 2004 was to describe a functionality in [Thru's] product." Ex 34. Harrison also conceded that "in marketing material for potential customers in 2014, Thru used the term 'Dropbox' not as a reference to its own brand, but, rather, to describe a functionality." Ex. 39 at 20:16-21:2. In a public marketing presentation, Thru described the term "Dropbox" as being "often . . . used to describe online file transfer/exchange of files," in common with other terms such as "secure file transfer," "managed file transfer," and "online collaboration." Ex. 32. Similarly, Thru has also produced marketing materials describing the file transfer functions of competitors products using the term "dropbox." *See* Ex. 63 (referring to "Site Dropbox" function in product offered by YouSendIt). Dropbox argues that these references conclusively demonstrate the Thru *itself* has always understood the term "dropbox" as a descriptive work for a particular type of software function, rather than as a distinctive name for its own product.

Furthermore, Dropbox argues that Thru's use of the term is descriptive under the "imagination test" used in the Ninth Circuit.[3] Under this test, "[a] term is suggestive 'if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced.'" *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (quoting *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999)). Dropbox argues that in a straightforward and commonsense way, the term "dropbox" is exactly descriptive of what it does. Harrison agreed, in his deposition, with Google's dictionary definition of the term as "a secured receptacle into which items such as returned books

---

[3] The Ninth Circuit additionally employs a so-called "competitors' needs test" to distinguish between descriptive and suggestive works, but Thru does not argue that "dropbox" is suggestive under this test. *See Zobmondo*, 602 F.3d at 1115.

5

1 or videotapes, payments, keys or donated clothing can be deposited." *See* Ex. 34; Ex. 79.
2 Dropbox argues that no mental leap is necessary to understand that Thru's software serves exactly
3 this function for electronic files. Motion at 16.

4 By contrast, Thru argues that in 2004, when it first began using the term "dropbox," "an
5 imaginative leap was required to reach the nature of the product offered." Opp. at 9. While the
6 concept of a cloud-based dropbox is now second nature, Thru argues that it was anything but
7 intuitive when its service launched.[4] The Court agrees. As the definition cited by Dropbox – "a
8 secured receptacle into which items such as returned books . . . can be deposited" – demonstrates,
9 prior to the development of its current usage, a "dropbox" was generally understood to be a
10 physical object. Significantly, moreover, a dropbox was used to make one-way deposits of objects
11 that would then usually be retrieved by a different party. An online dropbox, on the other hand, is
12 often used to store and retrieve files by one party in multiple locations. (Although it does appear
13 that Thru's product did, at least in part, allow for its customers to set up one-way online
14 dropboxes, through which third parties could send files). Thus, when Thru began using the term,
15 "dropbox" "convey[ed] an impression of a good but require[d] the exercise of some imagination
16 and perception to reach a conclusion as to the product's nature." *One Indus., LLC v. Jim O'Neal*
17 *Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009). For a mark to be suggestive, it is only
18 necessary that "a small exercise of imagination" is needed to associate the name with the product.
19 *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1048 (C.D. Cal. 2013)
20 (concluding that "Stonefire Grill" was suggestive because "it takes only a small exercise of
21 imagination to associate the name . . . with a restaurant serving mainly grilled and barbequed
22 items").

23 Dropbox points to documents showing that the term "dropbox" was already, as of 2004,
24 and indeed by the late nineties, being used to describe a digital receptacle of the sort created by
25 both companies. Exs. 80-84. Thru counters that many of these were "not uses likely to have been

---

[4] Indeed, Thru elsewhere indicates that it failed to secure venture capital in 2004-2005 because, at that time, "the Cloud was not understood and the concept of a business enterprise storing and accessing its files on remote, third-party servers, was considered unrealistic." Opp. at 1.

6

seen or understood by the average consumer, instead reflecting uses by computer programmers' discussion groups and in publications to computer programmers." Opp. at 10. That is true of some, but not all, of the sources Dropbox indicates. *See* Ex. 80 (1998 Miami Herald article describing a computer "drop-box" folder). Furthermore, Thru itself has indicated that its target customers were not "average consumers," but IT specialists. Ex. 63 (email from Harrison noting "[w]e are focused only [on] enterprise customers and sell directly to IT departments thus our marketing is directed to them"). Nonetheless, Dropbox's documents do not justify summary judgment on this point, as a reasonable factfinder, considering all of the evidence, could find the mark suggestive.[5]

Lastly, Dropbox argues that Thru impermissibly bases its suggestiveness argument on the fact that an imaginative leap would be required *in 2004*, when it first started using the term "dropbox," rather than today. Reply at 8. Dropbox cites a case from the Federal Circuit holding that "[j]udging inherent distinctiveness at the time of first use would be fundamentally unfair." *In re Chippendale USA, Inc.*, 622 F.3d 1346, 1354 (Fed. Cir. 2010). Dropbox cites no other case supporting this proposition, and the Court is unaware of any. Nor is it clear that *Chippendale* applies in the present circumstances. The Federal Circuit was considering distinctiveness for the purpose of a request for trademark registration, not, as here, trademark rights acquired through the common law. The court reasoned that "[i]t would be unfair for an applicant to delay an application for registration and then benefit from having distinctiveness measured at the time of first use. This would allow an applicant to preempt intervening uses that might have relied on the fact that the registration for the mark as inherently distinctive had not been sought at an earlier

---

[5] Thru also argues that Dropbox should be barred by the doctrine of judicial estoppel from arguing that "dropbox" is descriptive because the company "[i]nherently . . . has taken the position that DROPBOX is sufficiently distinctive to warrant registration" in its applications to the PTO. Opp. at 13. This argument is meritless. Judicial estoppel applies only where a party has expressly taken one position in one proceeding, and then takes a clearly inconsistent position in a subsequent proceeding. *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by *asserting* one position, and then later seeking an advantage by taking a *clearly inconsistent* position." (emphasis added)). As Dropbox points out, it "never took a position before the PTO on the acquired or inherent distinctiveness of DROPBOX." Docket No. 121 ("Reply") at 9. Judicial estoppel is thus not applicable.

7

time." *Id.* at 1354-55. But permitting distinctiveness to be judged at the time of first use is fully consistent with basic trademark principles governing the acquisition of rights via the common law through first use. Dropbox does not purport to argue that if Thru's use of "dropbox" *was* distinctive, Thru would nevertheless not have a claim because Thru had not sought registration. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (Without registration, a plaintiff may "establish his right to exclusive use in a common law infringement action," . . . such as by proving that the mark is not generic . . . and that no one else had first used it in commerce." (citations omitted)). Applying the Federal Circuit's holding in the context of registration to the context of the instant case would perversely penalize mark holders with common law rights who had used the mark and become so successful that their trademarks enter common parlance. The Court therefore declines to adopt *Chippendale* for present purposes.

  2. <u>Thru's Use of "dropbox" as a Trademark</u>

It has long been "a fundamental tenet of trademark law is that ownership of an inherently distinctive mark . . . is governed by priority of use." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219 (9th Cir.1996). Furthermore, "[t]he Ninth Circuit has imposed a strict 'continuous use' requirement to demonstrate common law priority: 'To be a continuous use, the use must be maintained without interruption.'" *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 851 (C.D. Cal. 2012) (quoting *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.,* 493 F.2d 709, 712 (9th Cir. 1974)). Thus, "a litigant claiming . . . senior rights in a mark must show: (1) that his or her 'use of the mark began before its registration and publication'; and (2) 'that there has been continuing use since that time.'" *Watec Co. v. Liu*, 403 F.3d 645, 653 (9th Cir. 2005).

The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source

1  of the goods." 15 U.S.C. § 1127. Thus, as the Ninth Circuit has explained, "[i]mplicit in the

2  concept of a trade mark 'is a requirement that there be direct association between the mark . . . and

3  the services specified in the application, i.e. that it be used in such a manner that it would be

4  readily perceived as identifying such services.'" *Self-Realization Fellowship Church v. Ananda

5  Church of Self-Realization*, 59 F.3d 902, 906–07 (9th Cir. 1995) (quoting *In re Moody's Investor

6  Serv., Inc.,* 13 U.S.P.Q.2d 2043, 2047 (T.T.A.B.1989)).

7       Dropbox argues that Thru never used the term "dropbox" as a trademark in this sense;

8  instead, it simply used the word to describe one part of the functionality of its software. Thus,

9  Dropbox relies principally on the same evidence discussed above that indicates that Thru

10 "regularly used the word 'dropbox' to refer: (i) to the file transfer functionality in the products of

11 its competitors; (ii) to Dropbox, Inc. specifically; and (iii) to file transfer functionalities

12 generally." Motion at 12. Dropbox also relies on the fact that, after discovering competitors,

13 including Dropbox, using the same term to describe their products, Thru took no action to police

14 its supposed rights in its trademarks. This indicates that it did not treat the word as a "source

15 identifier" associated with its specific product, rather than a type of product generally.[6]

16      Thru, meanwhile, argues that it intended to use "dropbox" as a trademark from the very

17 first, and in fact did so. Specifically it points to the fact that it identified its file transfer

18 functionality as DropBox, with a $^{TM}$ symbol appended, from as early as May 2004. Opp. at 3; *see*

19 *also* Ex. 2 (May 2004 user guide describing functionality of DropBox$^{TM}$). Dropbox rightly points

20 to case law holding that the mere use of a trademark symbol is not sufficient to establish use as a

21 trademark, but it does not follow, as Dropbox claims, that such a symbol is therefore "irrelevant"

22 or "window dressing." Motion at 13 n.10. Rather, the use of the symbol goes to Thru's intent in

23 the use of the term, which is at least probative evidence that a fact finder could use in determining

---

[6] Dropbox also points to the fact that Thru allowed its customers to feature *their* brand names and logos alongside the word dropbox on public-facing websites using Thru's software as evidence that Thru did not associate the term with its own product. This evidence does not support Dropbox's position; the question is whether Thru used tried to create an association between the term "dropbox" and its products in the minds of Thru's potential customers, not the *customers'* customers. Once Thru's customers purchased Thru's service, an explicit purpose of which was to facilitate file transfers for those customers and their own customers, it would only make sense for them to use the service with their own information attached when dealing with the public.

9

whether Thru used the term to identify its own services. Thru further points out that its employees were asked to "include the DROPBOX trademark in their email signature blocks" beginning in May 2004, and that Thru promoted its product, using the trademark, through individual sales pitches with potential customers. Nor does Dropbox contest that these uses have continued to the present. Drawing all inferences in Thru's favor, therefore, there is evidence in the record sufficient to permit a reasonable fact finder to conclude that Thru sufficiently used the term to identify its own services.

Because there is sufficient evidence to create triable issues of fact both as to the inherent distinctiveness of the "dropbox" mark, and as to Thru's trademark use of the term, summary judgment is not warranted on this question.

C.   Dropbox's Senior Trademark Rights

Dropbox next argues that summary judgment is appropriate because, even assuming that "dropbox" is inherently distinctive and Thru thus has a protectable interest in the mark, Dropbox has senior rights by virtue of its acquisition of Officeware's trademark rights in the term. "All courts follow the rule that after a valid assignment, the assignee acquires all of the legal advantages of the mark that the assignor enjoyed, including priority of use." 3 McCarthy on Trademark § 18:15 (4th ed. 2002). In Officeware's Rule 30(b)(6) deposition, its designee explained that as of January 2004, Officeware was "a cloud-based file-sharing, file collaboration, and storage company" doing business with a combination of "individuals, businesses, [and] government organizations." Ex 8 at 13-14. In other words, Officeware provided services very similar to those offered by Thru. And like Thru, Officeware used the term "dropbox" to describe file transfer functionality that Thru later characterized as the "same" as its own. Ex. 67. Officeware first began providing services to the city of Flower Mound, Texas, including its "dropbox" functionality, in January 2004, months earlier than Thru. Ex. 8 (Officeware 30(b)(6) deposition). The record contains an invoice issued to the city dated January 21, 2004, Docket No. 108 ("Cone Decl.") Ex. 14, as well as an email to the city dated January 20, 2004, referring to the "Dropbox" feature, capitalizing it for emphasis, Cone Decl. Ex. 13. The record also contains images of the Officeware website from dates beginning in August 2004 showing consistent use of

the term "Dropbox." Ex. 7. Officeware's designee explained that these images are consistent with the usage of the term that had continued at least since January 2004. Ex. 8 at 33. This evidence, taken together, convincingly demonstrates that Officeware engaged in the same use of the term "Dropbox" that Thru contends resulted in its own protectable interest, but did so months earlier than Thru. Assuming a factfinder concluded that "dropbox" was suggestive, and thus inherently distinctive, when used for an online file transfer product, Officeware would have established the first use, and would thus have the superior right, which it then transferred to Dropbox.

Despite having engaged in extensive discovery, Thru does not effectively negate this evidence. First, it argues that in its trademark application, Officeware stated that the date of its first use was August 8, 2004, not January. But what the application actually says is that Officeware used the "dropbox" trademark "[*a*]*t least as early as* 08/04/2004." Cone Decl. Ex. 2 (emphasis added). Officeware later explained that that date had been "easier to pinpoint" because there was already an active website clearly showing the use of the term, but upon review of the records of its Flower Mound account, it was able to pinpoint the earlier date. Ex. 89 56:5-20. Thru next argues that Dropbox "relies solely on hearsay and ambiguous documents in arguing that" Officeware began using "dropbox" in commerce in January 2004. But the "hearsay" that Thru complains of was in fact the 30(b)(6) deposition of Officeware; the officer designated by the company had not yet been employed in 2004, and thus did not have "personal knowledge" of these events, but in the context of a 30(b)(6) deposition, that is irrelevant. *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1132 (N.D. Cal. 2009) (stating that "[t]he testimony of a Rule 30(b)(6) corporate agent deponent may be presented on motion for summary judgment, even though not based on personal knowledge, because a Rule 30(b)(6) witness need not have personal knowledge of the facts to which he or she testifies" (quoting Moore's Fed. Prac. Civ. § 56.14[1] [d])).

Thru also argues that the 2004 email from Officeware to Flower Mound from January 2004, as well as Officeware's invoice to the city "do[] not show trademark use of DROPBOX." Opp. at 16. But as noted above, the email refers to the "Dropbox" feature, capitalizing it for emphasis; this is consistent with many of Thru's own claimed trademark usages. Cone Decl. Ex. 13. Finally, Thru claims that the transfer of rights from Officeware to Dropbox did not include the

11

goodwill, and thus does not effectively transfer trademark priority. Opp. at 16 (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992)). But as Dropbox notes, not only did the settlement agreement between Dropbox and Office expressly include the assignment of Officeware's goodwill, Ex. 7, goodwill is necessarily transferred where, as here, "the mark was transferred as part of the settlement of a *bona fide* infringement suit." *Gallo*, 967 F.2d at 1289. Officeware sued Dropbox for infringement of its "dropbox" mark in June 2011. After 18 months of litigation, the parties reached a settlement agreement in which Officeware assigned its rights in the mark to Dropbox and expressly provided for the transfer of the "goodwill symbolized by and associated therewith." Ex. 7 at 3. There is nothing in the record that provides any support whatsoever for Thru's contention that Officeware did not transfer the goodwill associated with its trademark.

In short, Dropbox has clearly pointed to record evidence indicating that Officeware had a superior claim to the "dropbox" trademark, and Thru has done nothing to challenge that evidence and create a triable issue of fact on that point despite having had a full opportunity to conduct discovery. *See Nissan Fire*, 210 F.3d at 1102 (noting that where "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."). There is nothing in the record from which a reasonable factfinder could conclude that Thru had senior rights to Officeware in 2004. Dropbox is therefore entitled to summary judgment on this basis.

### III. CONCLUSION

For the foregoing reasons, the Court holds that Dropbox is not entitled to summary judgment on the question whether Thru has any protectable rights in "dropbox," but that any reasonable factfinder would necessarily conclude that Dropbox had acquired senior rights from Officeware. Accordingly, Dropbox is entitled to summary judgment.

**IT IS SO ORDERED**.

Dated: December 7, 2016

_____
EDWARD M. CHEN
United States District Judge

12