UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DROPBOX, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>THRU INC.,<br><br>        Defendant. | Case No. 15-cv-01741-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Docket No. 153 |

## I.  INTRODUCTION

Plaintiff Dropbox brought this action for declaratory relief to establish its exclusive right to the trademark "Dropbox." Thru brought counterclaims for trademark infringement under the Lanham Act. This Court granted summary judgment for Dropbox on Thru's counterclaims, Docket Nos. 135 ("Order") & 146, and accordingly entered judgment in favor of Dropbox on all claims, Docket No. 149. Dropbox now moves for attorneys' fees under 15 U.S.C. § 1117(a). The Court **GRANTS** the motion.

## II.  DISCUSSION

A.  Dropbox's Entitlement to a Fee Award

    1.  The Exceptional Case Standard

Title 15 U.S.C. § 1117(a) provides that a district court "in exceptional cases may award reasonable attorney fees to the prevailing party" in a trademark action. The Supreme Court has recently held that an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "[A] case presenting either

subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

As an initial matter, Thru contends that *Octane Fitness* did not alter the standard for awarding attorneys' fees in trademark cases, and that this Court should accordingly follow prior Ninth Circuit precedent, according to which "[e]xceptional circumstances can be found when the non-prevailing party's case is unreasonable, vexatious, or pursued in bad faith." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008). But as Dropbox rightly points out, the Ninth Circuit en banc has since held otherwise, explaining that "*Octane Fitness* . . . ha[s] altered the analysis of fee applications under the Lanham Act." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc). The Circuit explicitly "overrule[d] [its] precedent to the contrary." *Id.* Dropbox is therefore correct that *Octane Fitness* provides the correct standard, and the Court should determine whether this case is "one that stands out from others" in light of the totality of the circumstances.

2. Discussion

Dropbox argues that this case is exceptional in this sense for three reasons. First, Thru's claims were substantively meritless because Thru was guilty of laches as a matter of law, and the evidence supporting this determination indicates that Thru acted in bad faith in delaying bringing suit. Second, Thru failed to develop evidence showing that its rights to the trademark were senior to Officeware's rights (and, as a corollary, those of Dropbox, which acquired Officeware's rights as part of a settlement agreement). Third, Thru's litigation conduct was unreasonable because it acted in bad faith in moving to dismiss Dropbox's complaint on the ground that there was no controversy between the parties, and further because its conduct in discovery was unreasonable.

a. Laches

The Court agrees that this case "stands out from others" based on the bad faith exhibited by Thru both before litigation, which led to this Court's application of laches, and during the litigation itself. First, and most significantly, this Court found that Thru's claims were barred by

laches based on overwhelming evidence in the record that (1) Thru knew of Dropbox's allegedly infringing use of its trademark years earlier than Thru had claimed during this litigation; (2) Thru had no valid justification for delaying pursuit of its claims, as Thru chose not to challenge Dropbox's trademark registration in 2011 when a number of other claimants, including Officeware, asserted their own rights to the trademark while Thru stood idly by; and (3) Thru's delay in asserting its putative rights to the mark was part of a deliberate scheme to increase the value of its claims by leveraging an anticipated initial public offering from Dropbox. *See* Order at 4-8. As the Court stated in granting summary judgment to Dropbox, "[i]f there is a paradigmatic set of facts that warrants laches, this is it." *Id.* at 9.

In *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG (JPRx), 2015 U.S. Dist. LEXIS 91403, at *14 (C.D. Cal. Mar. 10, 2015), the court similarly found a case was "exceptional" under *Octane Fitness* in part because the losing party's claims were barred by laches. There, the argument for laches was less compelling than in this case. In *Universal Elecs.*, the court denied summary judgment on the ground of laches; it was only after hearing all of the evidence at trial that it found laches applied. In ruling on the motion for fees, the Court noted that they delay "was created by Plaintiff, and in spite of it, Plaintiff inflicted the cost of defending a claim that Defendant" infringed Plaintiff's patent. *Id.* Similarly, in this case the Court faulted Thru for "'sleep[ing] on [its] rights,' allowing multiple other parties to expend significant resources litigating over rights that Thru believes it owns, only to belatedly pursue the victorious party." Docket No. 97 at 7. Also, *Universal Elecs.* relied in part on emails disclosed in discovery which revealed the plaintiff's improper motivation for undertaking the litigation. Similarly, in this case, Thru's emails revealed its bad faith attempt to delay prosecution of the case in order to increase its leverage over Dropbox.

In opposition to the instant motion, Thru attempts to relitigate the laches question, arguing again that it reasonably delayed bringing suit because it did not initially see Dropbox as a direct competitor and because it later concluded that filing a petition to cancel Dropbox's trademark registration was preferable to initiating a lawsuit. Thru provides no new reason to revisit the Court's settled finding on this point; the Court already rejected precisely the arguments Thru now

3

advances.

Thru has also submitted a declaration from its CEO, Lee Harrison, in which Harrison claims that the Court has misinterpreted the emails upon which it relied on in finding Thru's bad faith. Docket No. 164-2 ("Harrison Decl.). Harrison argues that the emails merely represent "informal, emotive or exaggerated statements, or 'left-field' or 'brainstorm' ideas that are not adopted." *Id.* ¶ 10. Neither Harrison nor Thru explain why they failed to offer these explanations for the emails at the summary judgment stage. In any case, however, Harrison's explanations are not plausible. For example, in one email, Harrison stated that "[t]ime is on our side not theirs, slow-walking this to the S1 filing is all that is important. The closer we get to that the better. This action was part of the slow walk." Docket No. 101-15. This statement was made shortly after this Court denied Thru's motion to dismiss; the "action" discussed was Thru's decision to file the motion. Harrison now asserts that he was referring to the fact that, regardless of the outcome of the motion, "we were in for a long legal process ('slow walk'), and that unless there was a ruling . . . prior to an IPO by DBI, the IPO likely would result in DBI settling with Thru, given the strength of Thru's claims." Docket No. 164-2 ¶ 22. This explanation ignores the clear import of "slow walk" as used in the email as referring a conscious strategy of delay; there is no other plausible reading of the email. Furthermore, Harrison is silent about his own deposition statements in which he explicitly affirmed that Thru intended to use the anticipated IPO as a "leverage point" against Dropbox. Harrison's belated attempt to cast the various emails in an innocuous light constitutes revisionist history which, if anything, confirms this Court's finding of bad faith.

     b.  <u>Conduct of the Litigation</u>

The Court also agrees that Thru's conduct during the litigation was unreasonable. First, as Dropbox argues, Thru's initial motion to dismiss was frivolous and brought in bad faith. Thru moved to dismiss Dropbox's declaratory relief complaint on the ground that there was no controversy between the parties given that Thru "merely takes issue with Plaintiff's registration of DROPBOX" and that it "has not and does not contest Plaintiff's use of the DROPBOX mark." Docket No. 19. Thru now contends that it sought to avoid litigation before being forced into it by

4

Dropbox, and that it was Dropbox which attempted to leverage its superior monetary assets by forcing Thru into expensive litigation. Thru claims that it merely sought to resolve its claims through the proceedings it initiated before the Patent and Trademark Office ("PTO") to cancel Dropbox's trademark. These assertions are not credible. Both emails and deposition testimony show that Thru had been contemplating litigation for years, hoping to wait until Dropbox was closer to its IPO. For example, in deposition testimony, Harrison conceded that he knew at least as early as 2011 that the PTO proceedings "would not have stopped Dropbox from using the name," and that in order to get that relief Thru would have to file a lawsuit. Docket No. 100 ("Slafsky Decl.") Ex. 34 ("Harrison Depo.") at 175:20-176:4. Harrison also conceded that Thru sought to exert "commercial leverage" over Dropbox through Thru's trademark claim, hoping to induce the latter to settle. *Id.* at 177:9. But such leverage could not exist unless Thru could stop Dropbox's use of the name, which could only be accomplished through a lawsuit. Its cancellation petition to the PTO could not have afforded such relief; such relief could be obtained only via a court injunction upon a judicial finding of infringement of Thru's trademark, precisely the relief sought in Thru's counterclaim.

Emails revealed during discovery further bear out that Thru long intended to institute litigation. For example, in 2013, officers of the company debated whether or not to file suit immediately; Harrison maintained that the "best leverage we have is to sit tight and wait to the IPO announcement and *be prepared to filed suit that day* and make as much noise as we can about it." Slafsky Decl. Ex. 51 (emphasis added). In early 2012, in an email discussing Thru's claims against Dropbox, Harrison stated that "an action could be had soon." Slafsky Decl. Ex. 48. After Dropbox filed the instant suit, a member of Thru's board indicated that the "proposed next steps" included "ask[ing] the Federal Court to throw this action out, and be ready to *lodge a counterclaim* in the Texas Court if that happens (is a cheaper jurisdiction)." Slafsky Decl. Ex. 56 (emphasis added). It was disingenuous for Thru to claim that there was no controversy between the parties when Dropbox filed its suit for declaratory relief. Indeed, as Harrison's email, discussed above, candidly notes, the very filing of the motion to dismiss was a mere dilatory tactic, part of Thru's "slow walk" strategy. It was not an authentic response of a supposed victim forced into litigation

5

1  it sought to avoid.

2  Dropbox also points to inaccuracies in Thru's interrogatory responses as further evidence
3  of Thru's bad-faith litigation tactics. First, as noted in the Court's prior order, Thru failed
4  accurately to disclose when it had first learned about Dropbox; in deposition testimony, Harrison
5  conceded that Thru's interrogatory response, which indicated that it had only learned of Dropbox
6  in 2011, was false. Harrison Depo. at 161-62. Second, when asked to identify all third parties it
7  knew of that had used the term "Dropbox," Thru listed only three universities and one competitor.
8  Slafsky Decl. Ex. 40 (Rog. No. 9). But as Harrison later acknowledged in deposition testimony,
9  Thru has been aware of a number of other competitors, including Officeware, that had used the
10 term. *See* Harrison Depo. at 120-21. Third, Thru stated it had used the term "dropbox" "in the
11 signature block for all emails sent by all Thru's employees since June 2004." Slafsky Decl. Ex. 40
12 Rog. 5. Discovery revealed that this practice was, in fact, not consistent as Thru represented.
13 Finally, in response listing documents that documents that Thru contended demonstrated
14 consumer confusion between its product and Dropbox's, Thru included a number of documents
15 with no bearing on this question, including blank pages and "gibberish." In Thru's 30(b)(6)
16 deposition, Harrison conceded that, in verifying the response as true and correct, he had "signed
17 them without looking at them." Docket No. 154 Ex. 2 at 113:11-12. Though Thru characterizes
18 these responses as merely innocuous mistakes to which it quickly owned up when presented with
19 contrary evidence, Thru's pattern of inaccurate responses and representations provide further
20 evidence of bad faith.

21 In sum, Thru's engaged in bad faith conduct both prior to and during this litigation. This is
22 an "exceptional case" justifying an award of fees.

23 B.   The Amount of Fees Awarded

24 Dropbox requests a fee award of $1,957,535.00, plus an additional $40,600 for work on the
25 instant motion. Motion at 14.

26 Dropbox's fee request is based on 3,740.6 hours billed at rates ranging from $275/hr for a
27 paralegal to $900/hr for a senior partner. The largest number of hours were billed by mid-level
28 associates billing at rates of $365/hr and $420/hr. Dropbox asserts that the high number of hours

were necessary because the "discovery process in this case was particularly arduous and expensive." Motion at 10. Specifically, Dropbox took or defended 13 depositions, produced two hundred thousand pages of documents, and reviewed over 2 million pages of documents produced by Thru. *Id.* The senior partner on the cases states that he exercised billing judgment, reviewing the time records and excising charges for anything he judged unnecessary or excessive. *Id.* at 11. In addition, Dropbox does not seek reimbursement for $200,000 of work performed by two associates who left the firm during the litigation effort, nor for work by firm personnel who billed less than $90,000 each, which amounts to roughly another $200,000. *Id.* The Court notes that Dropbox has already paid counsel for these requested fees, which provides market evidence of their reasonableness.

Thru first argues that the requested hourly rates are unreasonably high. It points to the fact that its own attorneys for this case bill only $540 and $525, respectively. The determination of a reasonable hourly rate "involves examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cotton v. City of Eureka,* 889 F.Supp.2d 1154, 1167 (N.D.Cal.2012). The "relevant community" for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds. *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir.1997). As an initial matter, as Dropbox notes, Thru's lead counsel is based in Dallas, and thus his hourly rate is irrelevant to determining the reasonable rate in San Francisco. In any case, however, Dropbox points to numerous cases in which this Court has approved similar, and even considerably higher, fee rates to lawyers of similar experience and qualifications in the San Francisco Bay Area in comparable cases. *See* Docket No. 153 at 12 (collecting cases). Comparable fee awards by courts are competent evidence for determining the reasonableness of hourly rates. *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1003 (N.D. Cal. 2012).

Thru also argues that Dropbox's hourly rates should be determined by reference to the "Laffey matrix," which is "an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 454 (9th Cir.2010) (citations omitted). As the Ninth Circuit has explained, however, "just because the

7

*Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Id.* Accordingly, this Court has previously "decline[d]" an invitation to use the matrix where, as here, the party requesting fees "has submitted competent evidence showing market rates in this area (including those awarded by courts)." *Rosenfeld*, 904 F. Supp. 2d at 1003. The Court does so in this case as well; Dropbox's requested hourly rates are reasonable based on the prevailing rates in this market.

As to the number of hours billed, Thru first argues that Dropbox's "attorneys spent excessive time 'meeting' and 'conferring' with one another on this matter, with each attorney billing for the meeting; multiple partners attended hearings; multiple partners billing for a single call to the client; multiple attorneys attending depositions." Docket No. 164 at 20. Thru does not point to any specific examples of this redundant billing, but some examples are evident from Dropbox's records. For example, Dropbox billed for two partners to attend the July 23, 2015 motion to dismiss hearing. At the same time, however Dropbox only billed for a single attorney to conduct the July 13, 2016 deposition of Thru CEO Lee Harrison. Similarly, only a single attorney appears to have billed time for an August 22, 2016 deposition. Whatever double billing counsel for Dropbox engaged in appears have been quite limited in scope.

Lastly, Thru argues that the "sheer number of hours [Dropbox] billed to this matter is ridiculous." Thru points to the fact that it incurred fees of less than $800,000 in this matter. Docket No. 164 at 20. But the Ninth Circuit has cautioned that "Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive. . . . Rather, any such comparison must carefully control for factors such as those mentioned, as well as for the possibility that the prevailing party's attorney – who, after all, did prevail – spent more time because she did better work." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). The results obtained in this case attest to the quality of the work performed by Dropbox's counsel. Moreover, given the stakes of this litigation, in which the very brand identity of a multi-billion dollar corporation was at stake, it is not unsurprising that Dropbox was willing to spend aggressively in a "bet-the-company" litigation effort. The number of hours

billed are therefore not unreasonable.

Thru further argues that such a large fee award would be unfair given that it spent 27% of its annual revenue "on a lawsuit it tried hard to avoid." Docket No. 164 at 14. As noted above, the record clearly belies the claim that Thru tried hard to avoid this litigation, and a significant portion of the expense incurred by Dropbox came as a result of Thru's bad faith litigation conduct. The Court therefore finds Dropbox's fee request reasonable, although it will reduce the amount by 10 percent to account for some degree of billing inefficiency. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (explaining that a district court may "impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation"). As noted above, Dropbox requests $1,957,535.00 in fees. Reducing that amount by 10 percent leaves a total award of $1,761,781.50.

Dropbox also requests a further $40,600 "for the additional expense of this motion." Motion at 14. Because Dropbox does not provide any further documentation explaining the lodestar basis for the additional fee request, the Court is unable to determine its reasonableness, and accordingly denies it.

C.   Costs

Dropbox makes two separate requests for costs. In its motion for attorneys' fees Dropbox requests reimbursement for its nontaxable costs. The Ninth Circuit has held that "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party'" as long as such costs are reasonably incurred. *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012) *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). In *Secalt*, the court remanded to the district court to evaluate the reasonableness of the claimed costs since no details were provided beyond broad categories such as "legal research" and "deposition expenses."

In this case, Dropbox requests the following nontaxable costs: (1) Discovery Vendor Fees, $236,055.23; (2) Expert Witness Fees, $162,936.00; (3) Deposition/Hearing Costs, $20,619.18. The total non-taxable costs requested are $419,610.41. In an accompanying declaration, counsel for Dropbox explains the necessity of each of these expenses and provides itemized breakdowns of

the costs incurred.  *See* Docket No 154 (Kramer Decl.) ¶¶ 26-27 (expert witnesses), 47-48 (e-discovery), 49 (deposition expenses); *see also id.* Exs. F-I.

In opposition, Thru first wrongly claims that Dropbox provides no authority for why it is entitled to nontaxable costs, and asserts that this court and the Ninth Circuit have "repeatedly acknowledged that DBI'S requests for these non-taxable costs under 15 U.S.C. § 1117 must be denied." Opp. at 21.  To the contrary, Thru provides no support for this broad claim and, as noted above, the Ninth Circuit has specifically stated that non-taxable costs are recoverable as part of a fee award under the Lanham Act.  Thru next contends that Dropbox's claimed e-discovery costs would not be allowable under 28 U.S.C. § 1920, but that is entirely beside the point.  Section 1920 covers *taxable* costs; Dropbox is seeking recovery precisely of *non*-taxable costs.[1]  For the same reason, Thru's citation to the limits placed on witness expenses by the Civil Local Rules is unavailing; those limits pertain to taxable costs.

The Court finds Dropbox's requested nontaxable costs reasonable.  Dropbox has adequately explained the necessity of the costs incurred, and it has thoroughly documented its specific expenditures.  *See* Kramer Decl. ¶¶ 26-27; 46-49; Exs. F-I; *see also Secalt*, 668 F.3d at 690 (remanding to district court to reevaluate reasonableness of awarded nontaxable costs where "no further details or itemization was provided" beyond broad categories such as "expert witness fee").  For example, Dropbox explains that the e-discovery vendor costs were necessary given the large volume of discovery in this case; the costs were largely related to hosting the voluminous documents produced by Thru, as well as to reviewing Dropbox's documents for privilege and responsiveness.  Kramer Decl. ¶ 47.  Dropbox's experts prepared reports on the descriptiveness of "Dropbox" as a trademark, as well as on the question of the term's secondary meaning as used by Dropbox and Thru.  Kramer Decl. ¶¶ 26-27.  The testimony of these experts would have been highly relevant had this case proceeded to trial.  This case was proceeding to discovery deadlines and trial.  Moreover, as with the fee award, Dropbox has already actually paid these costs, which provides significant market evidence of their reasonableness.  Accordingly, the Court will award

---

[1] Thru does not argue that § 1920 somehow preempts the award of non-taxable costs otherwise disallowed under § 1920.

1   $419,610.41 in nontaxable costs.

2   With respect to taxable costs, Dropbox requests the following: (1) $400.00 for fees of the
3   Clerk; (2) $3297.00 for fees for service of summons and subpoena; (3) $28,040.51 for fees for
4   printed or electronically recorded transcripts necessarily obtained for use in the case; (4) $40.00
5   for fees for witnesses; (5) $84,262.67 for fees for exemplification and the costs of making copies
6   of any materials where the copies are necessarily obtained for use in the case. The total requested
7   award of costs is $116,040.18. Docket No. 152.

8   Thru raises a number of objections to these costs. Docket No. 156. First, Thru argues that
9   fees for deposition transcripts should not be allowed where they were for discovery purposes and
10  not for trial preparation. In response, as to the transcripts, Dropbox notes that Local Rule 54-
11  3(c)(1) provides that "[t]he cost of an original and one copy of any deposition (including
12  videotaped depositions) taken for any purpose in connection with the case is allowable." Thus, it
13  is irrelevant whether or not they were for trial purposes, but in any case, Dropbox argues that it
14  would have called all of these witnesses at trial. Docket No. 157 ¶¶ 4-5. Thru's citation to
15  *Rodriguez v. Gen. Dynamics Armament & Tech. Prod., Inc.*, 775 F. Supp. 2d 1217, 1219 (D. Haw.
16  2011), is inapposite. In *Rodriguez*, the Court disallowed certain transcript costs, not because they
17  were for discovery purposes per se, but rather because the requesting party had failed to comply
18  with a local rule requiring the submission of a memorandum explaining the basis for the requested
19  costs and their necessity.

20  Thru also claims that Dropbox should not be able to recover the costs for expedited
21  delivery of such transcripts. In this case, the discovery cut-off date was September 15, 2016, the
22  same date on which Dropbox's motion for summary judgment was due. A trial date had been set
23  for January 23, 2017. Dropbox argues that expedited transcripts were warranted because, given
24  that discovery closed on the same date that dispositive motions were due, "Dropbox was required
25  to take depositions in parallel with its preparation of its successful summary judgment motion."
26  *Id.* ¶ 8. The Court agrees, and finds the transcript costs reasonable.

27  As to exemplification costs, Thru notes that only certain costs associated with e-discovery
28  are compensable. *Id.* at 5 (citing *Bonillas v. United Air Lines Inc.*, No. C-12-06574(EDL), 2014

11

WL 7247215, at *1 (N.D. Cal. Dec. 19, 2014)); *see also Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-CV-00159-CW (MEJ), 2014 WL 5494906, at *4 (N.D. Cal. Oct. 30, 2014) ("[O]nly those costs analogous to exemplification and copy-making are recoverable. Thus, for example, 'intellectual efforts involved in the production of discovery – including the research, analysis, and distillation of data incurred in the preparation of documents (as opposed to the cost of physically preparing the documents) – are not taxable costs.'"). Thru argues that Dropbox did not provide sufficient information for the court to determine whether the fees charged were for compensable tasks for not, and argues that only $10,929.26 of the requested $84,262.67 should be awarded.

However, as Dropbox notes, it incurred many of the costs at issue in the process of complying with Thru's own requirement, in its requests for production, that "documents that exist in digital format and constitute or comprise databases or other tabulations or collections of data or information should be produced in the native format, including all metadata." Some of the charges Thru objects to, including "loading data for processing and then processing for native review" were incurred to comply with this requirement. For the remaining costs, Dropbox argues that it provided sufficient detail in its initial declaration, highlighting "costs . . . incurred for collecting, scanning, converting to a usable file format, and processing for production," all of which courts have allowed as costs. *Id.* ¶ 16 (citing *Apple Inc. v. Samsung Elecs. Co.*, Case No. 5:12-CV-00630-LHK, 2015 U.S. Dist. LEXIS 111276, at *117-18 (N.D. Cal. Aug. 20, 2015). Here too, the Court agrees that these costs were reasonably incurred, especially in light of the large amount of discovery in this case. The e-discovery vendor was selected because it submitted the lowest bid among several competing firms, and Dropbox has actually paid all of these costs in full. Accordingly, the Court will award Dropbox the requested amount of taxable costs, $116,040.18.

Lastly, Dropbox argues that any costs the Court excludes as part of the taxable costs should be recoverable, as argued in its motion for attorneys' fees, as non-taxable costs. Because the Court finds the taxable costs reasonable, it does not reach this question.

///

///

///

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Dropbox's motion for attorneys' fees. The Court awards $1,761,781.50 in fees, $419,610.41 in nontaxable costs, and $116,040.18 in taxable costs.

This order disposes of Docket No. 153.

**IT IS SO ORDERED**.

Dated: March 8, 2017

_____
EDWARD M. CHEN
United States District Judge